**Ex Parte Casey Tyrone SLEDGE, Applicant.**

**No. AP–76,947.**

Court of Criminal Appeals of Texas.

Jan. 16, 2013.

---

**36.** The 83rd Legislature convened on January 8, 2013.

Casey Tyrone Sledge, Tulia, TX, for Appellant.

Randall Sims, District Attorney Potter County, Amarillo, Lisa C. McMinn, State's Attorney, Austin, TX, for State.

## OPINION

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, KEASLER, and HERVEY, JJ., joined.

Pursuant to a plea bargain with the State, the applicant was placed on deferred adjudication for the offense of sexual assault of a child.[1] The convicting court later adjudicated the applicant's guilt and sentenced him to five years' imprisonment because, among other things, he allegedly committed two new offenses. No appeal was taken. The applicant filed an initial post-conviction application for writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure,[2] in which he claimed that there was insufficient evidence to support his conviction.

---

1. TEX. PENAL CODE § 22.011(a)(2).

2. TEX CODE CRIM. PROC. art. 11.07. All subsequent references to Articles are to the Texas Code of Criminal Procedure.

On March 28, 2012, we denied the initial writ application without written order. This is a subsequent post-conviction application for writ of habeas corpus. In it, the applicant alleges that the trial court lacked jurisdiction to revoke his deferred adjudication community supervision because the capias for his arrest did not issue until three days after his community supervision period expired. In *Langston v. State*,[3] we held that a trial court loses jurisdiction to proceed to adjudicate a defendant's guilt when the district clerk fails to issue a capias before his probationary period expires.

█ While we are not unsympathetic to the applicant's claim, this Court lacks the authority to grant him relief. Because this is a subsequent post-conviction writ application, we are barred by the abuse of the writ doctrine, as codified by Section 4 of Article 11.07, from reaching the merits of that claim, much less granting relief.[4] Section 4 of Article 11.07 contains three statutory exceptions to the general rule that bars consideration of a subsequent post-conviction writ application, but the current application "contains" no "sufficient specific facts establishing" any of the enumerated exceptions.[5] The application fails to contain facts that establish either new law, new facts, or actual innocence.

**New Law:** If an applicant can invoke a legal basis for relief that was unavailable at the time of his initial post-conviction writ application, the applicant may overcome the Section 4 statutory bar.[6] To do so, he must establish that

the legal basis was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of [the State of Texas] on or before [the date of the application].[7]

The applicant fails to allege, and we are unaware of, any new legal basis that would sidestep the statutory bar that prevents us from reaching the merits of his claim.

**New Facts:** A subsequent application may also avoid a Section 4 bar by establishing that a factual basis now exists that was unavailable to the applicant when he filed his initial post-conviction writ application.[8] A new factual basis is one that could not have been discovered "through the exercise of reasonable diligence" before the date of the initial application.[9] We have stated that reasonable diligence "suggests at least some kind of inquiry has been made into the matter at issue."[10] In the instant case, the applicant claims he meets this exception because "he did not discover" the factual basis for the current claim until "on or about June 7, 2012," after he filed his initial post-conviction writ application. But the applicant does not explain why he was unable, through reasonable diligence, to ascertain the information before filing his initial post-conviction writ application. In fact, it is readily apparent that the applicant could have easily obtained the information before now, just

---

3. 800 S.W.2d 553, 554 (Tex.Crim.App.1990), *overruled in part by Harris v. State*, 843 S.W.2d 34, 35 (Tex.Crim.App.1992).

4. Article 11.07 § 4(a).

5. *Id.*

6. Article 11.07 § 4(a)(1).

7. Article 11.07 § 4(b).

8. Article 11.07 § 4(a)(1).

9. Article 11.07 § 4(c).

10. *Ex parte Lemke*, 13 S.W.3d 791, 794 (Tex. Crim.App.2000).

as he did for the purpose of developing his current post-conviction writ application.[11]

**Innocence:** If the application includes facts that establish "by a preponderance of the evidence" that, absent a federal constitutional violation, "no rational juror could have found the applicant guilty beyond a reasonable doubt," he may defeat the bar prohibiting a subsequent post-conviction writ application.[12] In *Ex parte Brooks*,[13] we explained that, to invoke this exception to the statutory bar, a subsequent application must contain facts to establish both a prima facie claim of a constitutional violation and a prima facie claim of actual innocence. Here, the applicant does not even attempt to make a prima facie claim of either a constitutional violation or his actual innocence, so he cannot avoid the Section 4 bar under this exception.[14]

■ **The Dissent—Jurisdiction:** The dissent argues that, regardless of the dictates of Section 4, the lack of *jurisdiction* over a case will render the judgment void, and such a judgment "may always be collaterally attacked." [15] But we have never said that "always" in this context should include for the first time in a subsequent application for writ of habeas corpus that fails to satisfy any of the three exceptions to our statutory abuse of the writ doctrine.

11. Before filing this subsequent post-conviction writ application, the applicant set out to prove that the trial court lacked jurisdiction to adjudicate his guilt because the capias issued after his probationary period expired. *See Langston, supra.* To bolster his claim, the applicant attached as Exhibit "A" a letter he apparently wrote, dated June 7, 2012, to a "Mr. Brian Thomas." An apparent response to the applicant's inquiry is written on the face of the same letter from a "Deputy Selman" from "Warrants and Extraditions," informing the applicant of the date his capias issued. The applicant does not refer to the letter in this exhibit in the body of his application. We have no information as to the identity or authority of Brian Thomas. Nor can we tell who Deputy Selman is, what law enforcement entity he works for, or when he apparently answered the applicant's query. However, it seems that, in response to his query, the applicant was able to obtain a copy of his capias, revealing the date the district clerk issued it, which the applicant also attaches as Exhibit "C."

Though Exhibit "A" does not tell us when the applicant may have received his reply from Selman, the applicant alleges that "on or about June 7, 2012" he learned the date that his capias issued, presumably (although he does not expressly say so) from Selman. Thus, by his own admission, the applicant was able to obtain the necessary data, including a copy of the capias, to bring his current claim within a period of a few days of his first attempts to do so. The relative ease with which he was able to discover the facts necessary to support the current writ application indicates a minimum amount of effort would have been necessary for the applicant to secure the same information, through reasonable diligence, before filing his initial postconviction writ application.

12. Article 11.07 § 4(a)(2).

13. 219 S.W.3d 396, 400 (Tex.Crim.App.2007).

14. Under the actual innocence exception to the abuse of the writ doctrine codified in Section 4, the applicant must establish a "violation of the United States Constitution[.]" Tex.Code Crim. Proc. art. 11.07 § 4(a)(2). The applicant does not specifically assert that a constitutional violation occurred—just that the trial court lacked jurisdiction to adjudicate his guilt. It is certainly possible to argue, as the dissent does, that a court that purports to act without jurisdiction violates the due process rights of the individual it purports to act upon. Dissenting Opinion at 116; *see also Ogle v. State*, 43 Tex.Crim. 219, 231, 63 S.W. 1009, 1012 (1901). Because the applicant fails to make a prima facie showing of actual innocence, his claim would be barred whether or not we *sua sponte* construed his jurisdictional claim to allege a constitutional violation—as the dissent would have us do.

15. Dissenting Opinion at 116 (quoting *Ex parte Seidel*, 39 S.W.3d 221, 224 (Tex.Crim. App.2001)).

Indeed, in *Ex parte Blue*,[16] we essentially held to the contrary. There, a capital habeas applicant argued that, under Section 5(a)(3) of Article 11.071 of the Code of Criminal Procedure,[17] he should be able to interpose a claim of mental retardation in bar of the death penalty in a subsequent post-conviction writ application—even though he had enjoyed every opportunity to raise that claim in his initial post-conviction writ application, but failed to do so.[18] Because execution of the mentally retarded is absolutely barred by the Eighth Amendment, he should be able to claim mental retardation "at any time," including in a subsequent post-conviction writ application, notwithstanding the statutory abuse of the writ doctrine.[19] We rejected this claim, holding that the legislative prerogative to regulate post-conviction habeas corpus procedure was well established and that "at any time" does not include in a subsequent post-conviction writ application that cannot meet the dictates of Article 11.071, Section 5.[20] There is no reason to believe that the same should not be true of Article 11.07, Section 4's abuse of the writ provisions.

▪▪▪ The dissent argues that this case is distinguishable from *Blue* because it involves a claim that the convicting court lacked jurisdiction.[21] It is, of course, axiomatic in our case law that review of jurisdictional claims are cognizable in post-conviction habeas corpus proceedings.[22] Moreover, we have recognized them to be cognizable without regard to ordinary notions of procedural default—essentially because it is simply not optional with the parties to agree to confer subject matter jurisdiction on a convicting court where that jurisdiction is lacking.[23] Therefore, unless and until such time as the Legislature might say otherwise, in exercise of its constitutional authority to regulate post-conviction writ procedure,[24] a meritorious claim of truly jurisdictional dimension will "always" be subject to vindication in an original post-conviction application for writ of habeas corpus. We do not mean here to say otherwise. Had the applicant properly raised his present claim in his original writ, we would not hesitate to reach the merits and, if appropriate, grant relief. But in the context of subsequent post-conviction writ applications, the Legislature *has* validly exercised its constitutionally-endowed regulatory authority to make it clear that only those claims that fit within the statutory exceptions prescribed

16. 230 S.W.3d 151 (Tex.Crim.App.2007).

17. Article 11.071 § 5(a)(3).

18. *Blue, supra,* at 154.

19. *Id.*

20. *Id.* at 155–56.

21. Dissenting opinion at 113–14.

22. *Ex parte Banks,* 769 S.W.2d 539, 540 (Tex. Crim.App.1989).

23. *Cf. Marin v. State,* 851 S.W.2d 275, 279 (Tex.Crim.App.1993) ("Of course, the system also includes a number of requirements and prohibitions which are essentially independent of the litigants' wishes. Implementation of these requirements is not optional and cannot, therefore, be waived or forfeited by the parties. The clearest cases of nonwaivable, nonforfeitable systemic requirements are laws affecting the jurisdiction of the courts."); *Garcia v. Dial,* 596 S.W.2d 524, 527 (Tex. Crim.App.1980) ("Jurisdiction of the subject matter cannot be conferred by agreement[.]").

24. *See Ex parte Davis,* 947 S.W.2d 216, 223–24 (Tex.Crim.App.1996) (McCormick, P.J., concurring, joined by four other members of the Court) (codification of the abuse of the writ doctrine in Article 11.071, Section 5 of the Texas Code of Criminal Procedure constituted a legitimate exercise of the Legislature's authority to "regulate" this Court's post-conviction habeas corpus jurisdiction, as conferred by TEX. CONST. art. V, § 5(c)).

by Subsections 4(a)(1) and (2) of Article 11.07 are cognizable. Short of overruling *Ex parte Davis*,[25] we are not at liberty talismanically to invoke "jurisdiction" to reach the merits and grant relief in a subsequent writ application.

The dissent seems to take the position that Section 4, *on its face*, does not apply the abuse of the writ doctrine to claims involving jurisdictional defects.[26] First, the dissent argues, because a purported judgment of conviction from a court lacking jurisdiction is a nullity from its inception, there is no final conviction to trigger this Court's authority under Article 11.07 to begin with, and so the abuse of the writ provisions of Section 4(a) do not apply.[27] This argument is untenable. The applicant filed his application for writ of habeas corpus in this cause on the Court's prescribed form for post-conviction applications under Article 11.07, and it plainly challenges the validity of something that at least purports to be a final conviction. It does not attempt in any other fashion to invoke this Court's original habeas corpus jurisdiction under Article V, Section 5 of the Texas Constitution,[28] or any other conceivable process that would remove the cause from the legislative authority to regulate post-conviction habeas corpus proceedings that we identified as controlling in *Davis*. The applicant cannot call upon our general authority to grant appropriate post-conviction habeas corpus relief under Article 11.07, while arguing that he should be insulated from the plain limitations upon subsequent writ applications embodied in Section 4(a).

■ Second, the dissent asserts that the Legislature could not possibly have intended to prohibit subsequent post-conviction habeas corpus applicants from challenging convictions obtained *sans* jurisdiction because such an intent would be too intolerable to contemplate, and therefore "absurd."[29] It is of course true that we primarily glean legislative intent from the statutory language itself when it is plain, unless application of the plain language "would lead to absurd consequences that the Legislature could not *possibly* have intended."[30] On its face, Section 4(a) plainly does not include jurisdictional claims among the exceptions to the prohibition against granting habeas corpus relief in a subsequent writ application. The dissent does not really contend otherwise, but seems to argue that to effectuate the plain language of Section 4(a) would lead to an absurd—indeed, an irrational—result.[31] But there is nothing irrational about the legislative exercise of its prerogative to draw a definite statutory line beyond which the State's substantial interest in the finality of its judgments overcomes all other policy interests, including the interest of habeas corpus applicants indefinitely to preserve a forum in which to challenge—even on jurisdictional grounds—the validity of their convictions. *Davis* established the legitimacy of that legislative prerogative, and we may not allow our judgment about legislative wisdom to thwart legislative will.

Because the statute plainly admits of no jurisdictional exception, we have no call to

---

25. *Id.*

26. Dissenting Opinion at 114–16.

27. Dissenting Opinion at 114.

28. Tex. Const. art. V, § 5(c).

29. Dissenting Opinion at 115–16.

30. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

31. Dissenting Opinion at 116.

resort to extra-textual considerations.[32] The dissent would nevertheless have us presume that, in enacting Section 4(a) of Article 11.07, the Legislature was aware of the evolution of post-conviction habeas corpus jurisprudence, and the burgeoning of cognizability of claims beyond those challenging the jurisdiction of the convicting court to include non-jurisdictional constitutional claims.[33] Aware of this history, the dissent asserts, the Legislature must surely have meant to limit the application of Section 4(a)'s abuse of the writ provisions to only the latter category of claims.[34] The dissent cites no supporting authority for this assertion other than the common presumption that the Legislature "is aware of case law affecting or relating to" its enactments.[35] We reject it. That the Legislature may have been aware of the historical expansion of habeas cognizability does not establish that it meant for its codification of the abuse of the writ doctrine to circumscribe that expansion only with respect to non-jurisdictional, constitutionally based claims. Moreover, to the extent that we have looked to legislative history in the past to construe Section 4, we have emphasized the clear legislative intent to provide but "one [full] bite of the apple," with no qualification expressed for habeas claims predicated on jurisdictional, as opposed to merely constitutional, defects.[36] To the contrary, the Legislature meant largely to mimic federal abuse of the writ practice.[37] We note that, in applying the federal abuse of the writ provision applicable to challenges of federal criminal convictions, at least one federal court of appeals has recently held that the federal district court rightly declined to entertain a petitioner's claim in a subsequent federal habeas corpus petition that the convicting court had lacked jurisdiction to convict him.[38]

**The Dissent—Innocence:** Although the applicant makes no argument that his application satisfies Section 4(a)(2) of Article 11.07, the dissenters do. According to the dissent, because the trial judge in this deferred adjudication proceeding had not yet found the applicant guilty, the rational fact-finder posited by Section 4(a)(2) (here, the trial judge) could *not* "have found the applicant guilty" because the trial court had lost jurisdiction to do so.[39] The dissent finds authority for this assertion in *Blue*. In *Blue*, we held that a rational jury "could" not answer capital punishment special issues in the State's favor—"if only for the simple reason that" a finding of mental retardation would, under the Eighth Amendment, obviate the submission of those issues to the jury "in the first place."[40] Here, by contrast, the relevant

32. *See Boykin, supra,* at 785.

33. Dissenting Opinion at 115 n. 5 & 115–16; *see also Ex parte Crispen,* 777 S.W.2d 103, 106–108 (Tex.Crim.App.1989) (Clinton, J., concurring) (describing the evolution of the scope of habeas cognizability from addressing only jurisdictional claims to also vindicating substantial federal constitutional defects).

34. *Id.* at 115–16.

35. *Id.* at 115–16 (citing *Miller v. State,* 33 S.W.3d 257, 260 (Tex.Crim.App.2000)).

36. *Ex parte Torres,* 943 S.W.2d 469, 473–74 (Tex.Crim.App.1997).

37. *Id.* at 473; *Blue, supra,* at 160 n. 40.

38. *Thompson v. Choinski,* 525 F.3d 205, 208 (2nd Cir.2008), *cert. denied,* 555 U.S. 1118, 129 S.Ct. 943, 173 L.Ed.2d 142 (2009).

39. Dissenting Opinion at 116–17. The dissent does not address the apparent anomaly that its analysis can apply only in cases of deferred adjudication, never in cases involving regular probation revocation proceedings.

40. *Blue, supra,* at 161. The applicable provision in *Blue,* subsection 5(a)(3) of Article 11.071, deals with the special issues submitted to the jury in a death penalty case. That subsection reads:

fact finding is not obviated. The trial court could not have placed the applicant on deferred adjudication community supervision "in the first place" without finding that the State's evidence at least "substantiates the defendant's guilt[.]"[41] Thus, at the time the statutory scheme contemplates that a *finding* of guilt *must* be made (albeit not acted upon in a formal adjudication), the fact-finder clearly "could have found the applicant guilty beyond a reasonable doubt."[42] Any subsequent proceeding for purposes of deciding whether to proceed to adjudication does not involve a revisitation of the initial guilt-substantiation determination.[43] The applicant has failed to show that "no rational jury could have found him guilty beyond a reasonable doubt" based upon whatever evidence was originally proffered to substantiate his plea; nor does he identify any new evidence that would somehow cast that original evidence in a new, overwhelmingly exculpatory light.[44] Under these circumstances the applicant has not satisfied the exception to the abuse of writ

doctrine that is embodied in Section 4(a)(2).

**Conclusion:** In Section 4 of Article 11.07, the Legislature has explicitly prescribed the only circumstances in which we may reach the merits of a subsequent post-conviction writ application. "[I]t is not for the courts to add or subtract" from that enactment.[45] We have long held that the Legislature is authorized to circumscribe post-conviction habeas procedure in precisely this way.[46] As none of the above statutory exceptions provides an appropriate vehicle to review the merits of the applicant's claim—much less grant relief—under Section 4, this Court has no choice but to dismiss the instant application.

ALCALA, J., filed a dissenting opinion in which COCHRAN, J., joined.

JOHNSON, J., dissented.

MEYERS, J., did not participate.

ALCALA, J., filed a dissenting opinion in which COCHRAN, J., joins.

I respectfully dissent from the Court's opinion dismissing the second application

Sec. 5 (a) If a subsequent application for a writ of habeas corpus is filled after filing an initial application a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient facts establishing that:

\* \* \*

(3) by clear and convincing evidence but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071 or 37.0711.

41. Article 42.12 § 5(a).

42. Article 11.07 § 4(a)(2).

43. *See* Article 42.12 § 5(b) ("The defendant is entitled to a hearing limited to the determination by the court of whether it proceeds with

an adjudication of guilt on the original charge."). *Cf. Manuel v. State,* 994 S.W.2d 658, 662 (Tex.Crim.App.1999) (since 1987, the Legislature has provided that defendants may immediately appeal the proceedings at which they were placed on deferred adjudication probation in the first place, and they must now raise issues of the sufficiency of the evidence to substantiate guilt in that immediate appeal, *not* in any later appeal of the decision to proceed to adjudication).

44. Article 11.07 § 4(a)(2).

45. *Coit v. State,* 808 S.W.2d 473, 475 (Tex. Crim.App.1991) (quoting *Ex parte Davis,* 412 S.W.2d 46, 52 (Tex.Crim.App.1967)).

46. *Davis,* 947 S.W.2d at 219. *Cf. Rushing v. State,* 85 S.W.3d 283, 285–86 (Tex.Crim.App. 2002) (the Legislature is empowered to regulate whether a claim of lack of jurisdiction in juvenile court may be raised on direct appeal).

of Casey Tyrone Sledge, applicant, for a writ of habeas corpus. At the outset, for purposes of clarity, it is important to observe that two jurisdictional questions are at issue here: The first question is whether this Court has jurisdiction to consider applicant's claim in this subsequent writ and, if we do, the second question is whether the applicant has proven that the trial court lacked jurisdiction to convict him. As to the second question, everyone appears to agree that applicant is correct in his underlying claim that the trial court did not have jurisdiction to convict and sentence him to prison.[1] But he cannot obtain relief on that claim unless this Court first decides that we have jurisdiction to consider it. The determination regarding this Court's jurisdiction over applicant's subsequent writ, therefore, is the focus of my dispute with the majority opinion. I disagree with the majority opinion's holding that applicant's claim is procedurally barred under Texas Code of Criminal Procedure Article 11.07, Section 4, the statute that contains procedural requirements for consideration of subsequent habeas applications.[2] See TEX.CODE CRIM PROC. art. 11.07, § 4(a). I conclude that this Court has jurisdiction to address applicant's subsequent writ because (1) the requirements governing subsequent writs do not apply to a claim that the trial court lacked jurisdiction and, alternatively, (2) if

those requirements do apply, that claim raises a constitutional violation that satisfies the procedural requirements so as to permit review. Having determined that this Court has jurisdiction over this subsequent writ, I would grant applicant relief.

## I. Requirements for Consideration of Subsequent Applications Are Inapplicable To Claims That Trial Court Lacked Jurisdiction

A claim that a trial court lacked jurisdiction is procedurally distinct from all other claims that may be presented in an application for a writ of habeas corpus because it concerns the power of the trial court to take any action at all other than to dismiss the case. As shown below, the Legislature understood this important distinction and intended that the procedural requirements necessary for this Court's consideration of subsequent writs not apply to claims alleging that the trial court lacked jurisdiction over a case.

## A. Trial Court's Lack of Power Makes Conviction Forever a Nullity

A court without jurisdiction lacks power over a case. See State ex rel. Millsap v. Lozano, 692 S.W.2d 470, 481–83 (Tex. Crim.App.1985). Jurisdiction is the source of a court's "power to hear and determine the matter in controversy according to established rules of law, and to carry the

---

1. This Court grants applicant relief on another, contemporaneously filed habeas application in which he challenges his conviction in trial-court cause number 49550–B. Applicant received both that conviction and the present conviction in the same proceeding at issue, and his sentences are running concurrently. Although his applications in both cause numbers raise the same jurisdictional challenge, the Court grants relief only in cause number 49550–B because it is the first time he has challenged that conviction. Therefore, although his challenge to the trial court's lack of jurisdiction is identical in both cases, this Court denies relief to him only in this case.

Unlike the majority opinion, I would grant applicant relief on both of his applications.

2. The majority opinion observes that applicant has already challenged this conviction on other grounds in a previous habeas application and has failed to allege new facts or law or a constitutional violation. See TEX.CODE CRIM PROC. art. 11.07, § 4(a) (setting forth procedural requirements for subsequent writs and permitting review of only claims that allege either new facts or law or, alternatively, a constitutional violation that resulted in defendant's conviction).

sentence or judgment of the court into execution." *Id.* at 481. Jurisdiction "exists by reason of the authority vested in the court by the Constitution and statutes" and "embraces everything in the case and every question arising which can be determined in the case, until it reaches its termination." *Garcia v. Dial,* 596 S.W.2d 524, 528 (Tex.Crim.App.1980).

This Court has specifically held that "judgments of conviction in courts without jurisdiction of the defendant are an absolute nullity from their inception." *Hoang v. State,* 872 S.W.2d 694, 699 (Tex.Crim. App.1993). Such a judgment "is attended by none of the consequences of a valid judgment." *Ex parte Seidel,* 39 S.W.3d 221, 225 (Tex.Crim.App.2001). It binds no one. *Paul v. Willis,* 69 Tex. 261, 266, 7 S.W. 357 (1887). It is "entitled to no respect whatsoever because it does not affect, impair, or create legal rights." *Seidel,* 39 S.W.3d at 225.

Absent jurisdiction to affect legal rights, a court's action is limited to dismissal of a case. *Garcia,* 596 S.W.2d at 528 n. 5 (court without jurisdiction "has no authority to render any judgment other than one of dismissal"). Any other judgment it purports to render "is a nullity." *Horan v. Wahrenberger,* 9 Tex. 313, 319 (1852).

## B. Because Trial Court's Actions Are Nullity, Jurisdictional Claims Are Unique

It is meaningless to compare jurisdictional claims to other types of claims that may be presented in an application for a writ of habeas corpus because the former claims are procedurally distinct. The rationale for this concept was explained in detail by a federal district court in *United States v. Baucum,* 80 F.3d 539, 540–42 (D.C.Cir.1996), *cert. denied,* 519 U.S. 879,

117 S.Ct. 204, 136 L.Ed.2d 139 (1996). There, the court held that a claim challenging the constitutionality of a statute involves a forfeitable, non-jurisdictional defect, which is procedurally different from a claim that a trial court lacked "original jurisdiction" over the case. *Id.* at 540–41. *Baucum* observed that "a jurisdictional claim can never be waived" and that, "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations" because there is no valid law to enforce. *Id.* It concluded, however, that a "belated assertion of a constitutional defect does not work to divest that court of its original jurisdiction to try him for a violation of the law at issue." *Id.* at 541; *see also Karenev v. State,* 281 S.W.3d 428, 434 (Tex.Crim. App.2009) (holding that facial challenge to constitutionality of statute not "jurisdictional" and thus subject to waiver or forfeiture).

This rationale explains why the applicant's claim in *Ex Parte Blue* is procedurally distinguishable from the claim at issue, which challenges the trial court's lack of jurisdiction. 230 S.W.3d 151 (Tex.Crim. App.2007). In *Blue,* Blue raised a claim that the federal Constitution prohibited the execution of a mentally retarded person. *Id.* at 154. This Court held that the procedural requirements necessary for us to consider a subsequent writ applied to that claim. *Id.* at 159. Because *Blue* involved a claim of non-jurisdictional constitutional error, this Court properly held that the claim was subject to forfeiture under the subsequent-writ statute. *Id.* Unlike *Blue,* however, the claim here challenges the trial court's lack of jurisdiction over applicant's conviction and sentence and, as detailed above, that type of claim is not subject to waiver or forfeiture.[3] *See*

---

**3.** The distinction between jurisdictional and non-jurisdictional claims has been somewhat

obfuscated by the language used to describe and analyze habeas claims at common law.

*id.* Because constitutional rights may be waived or forfeited by a defendant's action or inaction, a claim asserting a constitutional right is procedurally distinct from a claim asserting that the trial court lacked jurisdiction, and, therefore, reliance on precedent that applies rules of procedural default to a constitutional right is misplaced.

## C. The Legislature Did Not Intend to Procedurally Default Jurisdictional Claims

For two reasons, I conclude that the Legislature did not intend to require a subsequent writ raising a jurisdictional claim to meet the procedural requirements to qualify for this Court's review. *See* TEX.CODE CRIM. PROC. art. 11.07, § 4(a). I reach this conclusion by (1) examining the plain language of the statute to determine the intent of the Legislature and (2) examining the common-law history of habeas and the context in which the statute was enacted. *See Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex.Crim.App.1991) (courts should apply plain language unless that would lead to absurd consequences that Legislature could not possibly have intended, which would then permit review of extratextual factors).

First, the plain language of the statute expressly applies to a post-conviction habeas application filed after a final felony conviction. *See* TEX.CODE CRIM PROC. art. 11.07, § 3(a). ("After final conviction in any felony case, the writ must be made returnable to the Court of Criminal Appeals of Texas at Austin, Texas."). Here, however, no final conviction exists. "[A] judgment will never be considered final if the court lacked subject-matter jurisdiction." *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex.2000). It is well-settled law that a legal action by a court without jurisdiction is a nullity. *See Horan*, 9 Tex. at 319; *Seidel*, 39 S.W.3d at 225. This Court has recognized that no legal consequences can result from a court with no power to act and that an action is a nullity even when a court has not yet declared it to be a nullity. *See Hoang*, 872 S.W.2d at 699 (holding that judgments that are nulli-

---

Although our case law historically has discussed habeas claims as challenging "void" judgments, the generic term "void" has different implications depending on whether it applies to jurisdictional challenges or non-jurisdictional challenges. On the one hand, a judgment rendered by a court wholly lacking jurisdiction is "void" and, as discussed, is "an absolute nullity from [its] inception." *Hoang v. State*, 872 S.W.2d 694, 699 (Tex.Crim.App. 1993); *see also Gallagher v. State*, 690 S.W.2d 587, 589 n. 1 (Tex.Crim.App.1985). On the other hand, even when a court initially had jurisdiction over an action, we have labeled a judgment rendered by that court "void" if it arose from a fundamental or constitutional defect. *See Ex parte Young*, 418 S.W.2d 824, 826 (Tex.Crim.App.1967) ("A judgment of conviction obtained in violation of due process of law is void for want of jurisdiction of the court to enter such judgment."); *Ex parte Ross*, 522 S.W.2d 214, 223 (Tex.Crim.App. 1975) (ineffective assistance of counsel rendered judgment "void" so as to permit review on habeas). Such a judgment, however, is not a nullity from its inception; it is "void" only insofar as it is subject to collateral review. *See Young*, 418 S.W.2d at 826; *Ross*, 522 S.W.2d at 223. As the Supreme Court has observed, "This is not to say that a state criminal judgment resting on a constitutional error is void for all purposes," only for the purposes of affording a defendant confined on such a judgment the fullest opportunity for plenary judicial review. *Fay v. Noia*, 372 U.S. 391, 424, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The labeling of judgments stemming from non-jurisdictional errors as "void" for purposes of habeas review (ostensibly to bring those claims within the traditional habeas jurisprudential framework) has generated ongoing confusion about the concept of voidness. Although many different habeas claims characterize judicial actions as "void," it is critical to avoid conflating actions that are a nullity from their inception with actions that merely suffer a non-jurisdictional defect.

ty from inception do not bar successive prosecutions under double jeopardy "even though such judgments have not been formally vacated by a court of competent jurisdiction"); *see also Chambers v. Hodges*, 23 Tex. 104, 110 (1859) (appellate affirmance of judgment rendered without jurisdiction would itself be a nullity "by reason of the nullity of the judgment appealed from").[4] Because an action that is a nullity is always that—even when a court has not yet declared it to be a nullity—the plain language of the statute that prescribes the requirements for subsequent writs that follow a "final conviction" is inapplicable to this case.[5]

Second, it would be absurd to conclude that, in enacting the statute, the Legislature intended to permit the continued incarceration of a person on the basis of a null conviction that was rendered by a court with no power over the case. We presume that the Legislature understands applicable legal concepts when it enacts legislation. *See Miller v. State*, 33 S.W.3d 257, 260 (Tex.Crim.App.2000) (in construing a statute, "it is presumed that the legislature is aware of case law affecting or relating to the statute"). The Legislature, therefore, understood that a court's power to act could never be affected by a party's consent, action, or inaction, and, therefore, could not have intended for procedural default to preclude a claim alleging that a trial court lacked jurisdiction. A court that lacks jurisdiction may not acquire it by a defendant's action or inaction or by subsequent judicial action. *See Marin v. State*, 851 S.W.2d 275, 279 (Tex.Crim.App. 1993) (jurisdiction not optional with parties and cannot be waived by consent); *Wynns v. Underwood*, 1 Tex. 48, 49 (1846) ("[C]onsent . . . cannot give jurisdiction."). Implementation of this requirement is not

4. This Court has held that a defendant may waive a direct-appeal jurisdictional challenge to the validity of the transfer of an action from juvenile to district court. *Rushing v. State*, 85 S.W.3d 283, 286 (Tex.Crim.App. 2002). In *Rushing v. State*, the Court reasoned that the Legislature could limit the right of appeal because it could withhold that right entirely. *Id.* at 285 ("[T]he right to appeal is not of constitutional magnitude, but is derived entirely from statute."). By contrast, the Legislature may not withhold the right of habeas corpus. TEX. CONST. Art. I, § 12 ("The writ of habeas corpus is a writ of right, and shall never be suspended.").

5. It appears that the Legislature intended for challenges to the trial court's lack of jurisdiction to proceed as they did under the common law. For centuries, habeas review was limited almost exclusively to challenges to a court's jurisdiction. *See, e.g., Wright v. West*, 505 U.S. 277, 285, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) ("For much of our history . . . a prisoner seeking a writ of habeas corpus could challenge only the jurisdiction of the court that rendered the judgment under which he was in custody."). By contrast, the enactment of the habeas statute occurred to address the expansion of writs other than jurisdictional claims. In recent decades, courts have recognized certain non-jurisdictional claims as cognizable on habeas, namely, "denials of fundamental or constitutional rights." *Ex parte Shields*, 550 S.W.2d 670, 675 (Tex.Crim.App.1976); *see also Preiser v. Rodriguez*, 411 U.S. 475, 485, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (explaining that, although originally limited to determining whether court possessed jurisdiction, "over the years, the writ of habeas corpus evolved as a remedy available to effect discharge from any confinement contrary to the Constitution or fundamental law"); *Ex parte Graves*, 70 S.W.3d 103, 107–09 (Tex.Crim.App.2002) (detailing evolution and expansion of habeas review). Today, habeas applicants may seek review of a myriad of errors, both jurisdictional and non-jurisdictional. The scope of claims cognizable on habeas has expanded considerably since the origins of that remedy. I conclude that the purpose of the habeas statute was to limit subsequent writs to regulate the influx of applications raising claims that were only recently cognizable rather than to limit the traditional common-law claim that the trial court lacked jurisdiction over the case.

optional and is "independent of the litigants' wishes." *Marin*, 851 S.W.2d at 279. Neither his inaction (e.g., failure to challenge jurisdiction) nor action (e.g., challenging the conviction on other grounds) is of consequence. *See id.* Neither can transform a judgment that is a nullity into one that is not. *See Chambers*, 23 Tex. at 104; *Hoang*, 872 S.W.2d at 699. Because the Legislature understood that procedural-default rules do not apply to jurisdictional claims, it could not have rationally intended to limit subsequent writs that allege that a trial court lacked jurisdiction over a case through the inapplicable concept of procedural default.

The record conclusively shows that the trial court lacked jurisdiction over this cause.[6] Although this is a subsequent writ, a judgment that is a nullity for lack of jurisdiction "may always be collaterally attacked." *Seidel*, 39 S.W.3d at 224 (citing *Hoang*, 872 S.W.2d at 698). I, therefore, would construe this application as one seeking a writ of habeas corpus under the common law or permit the amendment of this application to include this ground and grant relief.

## II. Alternatively, Applicant's Claim Meets Requirements for Subsequent Writs

I, alternatively, conclude that, even if the subsequent-writ statute applies to jurisdictional claims, applicant is entitled to relief because he has satisfied one of the statutorily enumerated exceptions. The statute permits a court to consider the merits of a subsequent application if it contains facts establishing that, "by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt." TEX.CODE CRIM. PROC. art. 11.07, § 4(a)(2). Applicant has alleged facts that satisfy this criteria.

Applicant's application and the record reveal that the trial court adjudicated his guilt without having jurisdiction over the proceedings. A defendant is "denied due process of law and due course of the law when the district court" acts without jurisdiction. *Ex parte Birdwell*, 7 S.W.3d 160, 162 (Tex.Crim.App.1999); *see also* U.S. CONST. amend. XIV, § 1; *Frank v. Mangum*, 237 U.S. 309, 326, 35 S.Ct. 582, 59 L.Ed. 969 (1915) (due process requires that a criminal prosecution be "before a court of competent jurisdiction"). But for this constitutional violation—namely, the commencement of criminal proceedings by a court without jurisdiction—the trial court, as factfinder, could not have found applicant guilty. *See Blue*, 230 S.W.3d at 161;[7] *see also Ex parte Knipp*, 236 S.W.3d

---

**6.** After applicant's community-supervision period had expired, the court (1) issued a capias for applicant's arrest; (2) found the allegations in the State's motion to adjudicate true; (3) convicted applicant; and (4) sentenced him to five years in prison. *See* TEX.CODE CRIM PROC. art. 42.12, § 5(h) (providing that trial court retains jurisdiction over community-supervision proceedings and may adjudicate guilt after the community-supervision period has expired only "if before the expiration the attorney representing the state files a motion to revoke, continue, or modify community supervision and a capias is issued for the arrest of the defendant."). Applicant, therefore, is in prison on a judgment rendered by a

court that has no jurisdiction over this case, which is the basis of his complaint in the present application. *See Ex parte Sandoval*, 167 Tex.Crim. 54, 318 S.W.2d 64, 65–66 (1958) (granting relief because "there was no criminal case against relator pending in [that court] when the order for support was entered and that court was without jurisdiction to enter the support order" under any law).

**7.** The statute refers to a "juror" as the adjudicator of guilt. *See* TEX.CODE CRIM PROC. art. 11.07, § 4(a). Here, applicant's revocation of his deferred-adjudication community supervision and conviction was by the court. However, no rational juror could have found him

214, 217 (Tex.Crim.App.2007) (permitting review of applicant's subsequent application raising double-jeopardy constitutional claim under Texas Code of Criminal Procedure Article 11.07, Section 4(a)(2)).

I would, alternatively, hold that a habeas applicant alleging, in a subsequent writ, that the trial court lacked jurisdiction to render a judgment satisfies Section 4(a)(2) if he demonstrates by a preponderance of the evidence that no rational factfinder could find facts sufficient to support that the trial court had jurisdiction over the proceedings. *See* TEX.CODE CRIM. PROC. art. 11.07, § 4(a)(2). Because applicant has done this, he is entitled to relief.

guilty under the terms of his plea-bargain agreement because the agreement provided that he would receive no finding of guilt under his deferred adjudication. In this respect, the present case is analogous to *Ex parte Blue*, 230 S.W.3d 151 (Tex.Crim.App.2007). Although we held that Blue's subsequent habeas application was subject to statutory procedural requirements, we concluded that his *Atkins* claim met the third statutory exception, which, in relevant part, mirrors the language of the statutory exception applicable here. *Id.* at 161. (citing TEX.CODE CRIM. PROC. art. 11.071, § 5(a)(3)). We explained that sufficient evidence that an applicant was mentally retarded would meet this exception "if only for the simple reason that the statutory [death-penalty] special issues would not be submitted to the jurors in the first place." *Id.* In other words, given the absolute constitutional prohibition against executing a mentally retarded offender, once it is demonstrated that an offender was mentally retarded, no jury would ever be confronted with the special issues. *Id.* The same rationale applies to this case. No jury would ever be confronted with applicant's guilt because the plea-bargain agreement limited the trial court's determination to a withheld finding of his guilt.