IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 




NO. WR-55,850-02






EX PARTE ARTURO ELEAZAR DIAZ, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


IN CAUSE NO. CR-1464-99-G FROM THE


370TH DISTRICT COURT OF HIDALGO COUNTY





 Price, J., filed a dissenting statement.


DISSENTING STATEMENT



 Over the last fifteen years or more, Texas has executed any number of people whose
legal representation during their state post-conviction habeas corpus proceedings was plainly
inadequate. Who knows how many of them may have been able to obtain new trials with
adequate representation? Some of them may even have been innocent--think of Anthony
Graves's near miss, for example (1)--although for most of them we will likely never know for
sure.

 In the last two years, the United States Supreme Court has finally rendered a pair of
decisions that partially remedies this situation, at least for purposes of federal habeas corpus
review of state court convictions. By the combined opinions in Martinez and Trevino, (2) the
Supreme Court has held that a federal petitioner from Texas may pursue the merits of a claim
of ineffective assistance of trial counsel in federal habeas corpus proceedings, even if he
failed to pursue that claim in state court, so long as he can show that the default in state court
was a product of ineffective representation by his initial state habeas counsel. Unfortunately
for Arturo Diaz, whose initial state habeas counsel arguably failed to adequately present a
claim of ineffective assistance of trial counsel under Wiggins v. Smith, (3) these recent Supreme
Court holdings may not help him. Martinez and Trevino excuse a procedural default that
occurred in state court on account of ineffective state habeas counsel only for purposes of an
initial federal habeas petition. Diaz has already litigated his initial federal petition, and he
cannot hope to successfully pursue a Martinez/Trevino claim in a subsequent federal habeas
petition. (4)

 Diaz has now filed another state post-conviction application for writ of habeas corpus
in which he is attempting to re-raise his Wiggins claim, this time presenting a specific
pleading with regard to what an adequate mitigation investigation would have uncovered and
how the lack of such an investigation adversely impacted the punishment phase of his trial. 
He presents documentary evidence in support of these allegations, and his claim appears to
be substantial. Nonetheless, in order to proceed with a subsequent post-conviction
application for writ of habeas corpus under Article 11.071, Section 5, of the Code of
Criminal Procedure, an applicant must plead "sufficient specific facts establishing that . . .
the current claims and issues have not been and could not have been presented" in a previous
writ application. (5) Obviously the applicant's Wiggins claim was available to him when he
filed his initial state writ application, since he did in fact raise it. But he failed to
demonstrate the diligence required by Article 11.071, Section 5(a)(1), in that his counsel
apparently failed to conduct the kind of investigation that would discover, develop, and
document the underlying facts necessary to support a Wiggins allegation. (6) His initial
pleading was pro forma, with no substantive content. His only hope for obtaining a review
of the merits of his claim now, at least in the guise of a subsequent writ application, is to
argue that ineffective assistance of initial state habeas counsel constitutes a new factual basis
to justify the re-presentation of his Wiggins claim.

 I have urged the Court on several occasions in the past to consider such a construction
of Article 11.071, Section 5(a)(1), but without success. (7) Even after Martinez and Trevino,
this Court continues to adhere to the holding it announced in Anthony Graves's case that
Article 11.071's guarantee of "competent counsel" for purposes of an initial capital habeas
application does not mean counsel who in fact performs effectively, but only counsel who
was qualified to do so at the time of his appointment, regardless of how he actually
performed. (8) By this construction, the Court has essentially determined that the Legislature
has mandated that we turn a blind eye to the failure--even the abject failure--of initial state
habeas counsel to safeguard the constitutional rights of his client. It is difficult to square this
willful blindness with "the premise" upon which "the entire statute is built" that "a death row
inmate does have one full and fair opportunity to present his constitutional or jurisdictional
claims in accordance with the procedures of the statute." (9)

 Much as I would prefer that the Court reconsider its unfortunate holding in Graves,
I must concede that nothing about the Supreme Court's opinions in Martinez and Trevino
compels us to do so. Graves construed Article 11.071, Section 5, and, because the Supreme
Court eluded the issue of whether the Sixth Amendment mandates the effective assistance
of counsel in habeas corpus proceedings, nothing in Martinez/Trevino even arguably renders
the Court's construction of that provision unconstitutional. Nevertheless, as Judge Alcala
has elsewhere recognized, Martinez and Trevino have triggered federalism concerns, paving
the way for de novo federal review of a number of state claims and concomitantly diluting
the control Texas would otherwise exercise over the finality of its own convictions. (10)

 Perhaps we are not at liberty to carve out what Judge Alcala has called an "equitable
exception" to the limits on subsequent capital habeas claims that Article 11.071, Section 5,
imposes. (11) We have often acknowledged our lack of authority to redraft statutory language
to suit our own preferences in the name of policy or "equity." (12) But that does not leave us
altogether powerless.

 In Ex parte Kerr, (13) initially appointed state habeas counsel filed a document that
purported to be a post-conviction application for writ of habeas corpus, but which only
challenged the constitutionality of the habeas statute itself. (14) We held that such a pleading
"was not, in fact, a true application for a writ of habeas corpus under [A]rticle 11.071
because it did not attack [the] applicant's capital murder conviction or death sentence." (15) We
likewise deemed a later pleading that challenged only the competency of the initial state
habeas counsel's representation not to constitute a "writ application" for purposes of
triggering Section 5's abuse-of-the-writ provisions. (16) Because neither previous pleading
satisfied the criteria for a true post-conviction application for writ of habeas corpus, we held
that Kerr's third-filed pleading, which for the first time challenged his conviction and death
sentence, constituted his initial writ, and that "[h]e is entitled to have the merits of that initial
application heard and decided." (17)

 Almost ten years later, in Ex parte Medina, (18) the Court construed Kerr to apply to a
purported post-conviction application for writ of habeas corpus that failed to "contain both
legal claims and factual contentions." (19) Initial habeas counsel in Medina had deliberately
filed an application which stated adequate legal grounds but only the barest of specific facts
in support of his claims for relief under those legal grounds. We observed:

 Applicant, because of his counsel's intentional refusal to plead specific
facts that might support habeas-corpus relief, has not had his "one full and fair
opportunity to present his constitutional or jurisdictional claims in accordance
with the procedures of [Article 11.071]." Not full because he is entitled to one
bite at the apple, i.e., one application, and the document filed was not a proper
writ application. Not fair because applicant's opportunity, through no fault of
his own, was intentionally subverted by his habeas counsel. (20)


As suggested by the last clause of this passage, we went on to articulate a limiting principle:
essentially, that a purported writ application that is deficient for lack of specific factual
allegations will be regarded as a non-writ-application only when it involves "not habeas
counsel's lack of competence but his misplaced desire to challenge the established law at the
peril of his client[.]" (21) In retrospect, it is not apparent to me that our limiting principle
withstands scrutiny. It is not altogether clear to me, for example, how it is objectively less
fair to a capital habeas applicant that he has been deprived of his one full bite at the apple by
the incompetency--as opposed to the deliberate gamesmanship--of his initial state habeas
counsel. Either way, he suffers "through no fault of his own." (22)

 It is equally unclear to me how the essential character of a pleading can be made to
depend upon the intention of the pleader. A purported writ application either states sufficient
facts to flesh out a cognizable claim, or it does not. It either constitutes a post-conviction
writ application or it does not. Whether a document pleads sufficient specific facts so as to
constitute a "writ application" in contemplation of Kerr cannot reasonably be made to turn
on the good faith of the attorney who prepared it--it is either sufficiently well drawn or it is
not. Such a document cannot be regarded as a writ application when the pleader deliberately
omits sufficiently specific facts but not a writ application when the facts are left out because
of the pleader's plain inaptitude.

 Diaz's initial state habeas lawyer pled his client's writ application with no greater
factual specificity than Medina's lawyer pled Medina's. The Court should take the time to
consider declaring that the applicant's initial pleading constitutes no writ application at all,
appointing the applicant's present counsel to be his initial state habeas counsel under Article
11.071, Section 4A, (23) just as we did in Medina, and treating the applicant's current
application as his initial post-conviction habeas corpus pleading. Because the Court will not
stay the applicant's execution long enough even to consider this prospect--instead contenting
itself to permit another potentially deserving habeas applicant to die--I dissent.


FILED: September 23, 2013 

DO NOT PUBLISH
1. See Pamela Colloff, Free at Last, Texas Monthly November 2010 ("At the recommendation
of the Burleson County district attorney's office, state district judge Reva Towslee-Corbett signed
a motion that stated, simply, 'We have found no credible evidence which inculpates [Graves].' In
other words, all capital murder charges were dropped. * * * Burleson County district attorney Bill
Parham . . . was clear that this was not a matter of having insufficient evidence to take to trial;
charges were not dropped because too many witnesses had died over the years or because the
evidence had become degraded. 'There's not a single thing that says Anthony Graves was involved
in this case,' he said. 'There is nothing.'"); Pamela Colloff, Innocence Found, Texas Monthly
January 2011 ("Burleson County district attorney Bill Parham told reporters at a hastily organized
press conference that he was 'absolutely convinced' of Graves's innocence. * * * When [special
prosecutor Kelly] Siegler's turn came to address reporters, she placed the blame for Graves's
wrongful conviction squarely on former DA Charles Sebasta. 'It's a prosecutor's responsibility to
never fabricate evidence or manipulate witnesses or take advantage of victims,' she said. 'And
unfortunately, what happened in this case is all of those things.' Graves's trial, she said, had been
'a travesty.'").
2. Martinez v. Ryan, 132 S. Ct. 1309 (2012); Trevino v. Thaler, 133 S. Ct. 1911 (2013).
3. Wiggins v. Smith, 539 U.S. 510 (2003).
4. See 28 U.S.C. § 2244(b)(1) ("A claim presented in a second or successive habeas corpus
application under Section 2254 that was presented in a prior application shall be dismissed.") Diaz
presented his Wiggins claim in his initial federal habeas petition, but the federal courts rejected it for
lack of factual development in the state habeas proceedings--the very ineffectiveness about which
Diaz now complains. Diaz v. Quarterman, 239 F. App'x 886, 889-90 (5th Cir. 2007) (not designated
for publication). See Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011) (federal habeas review of
a state court judgment is limited to a review of the objective reasonableness of that judgment in view
of the record that was before the state court). Earlier, Diaz had argued that the deficiencies in his
federal Wiggins claim should be excused because state habeas counsel had been ineffective in
developing it in state habeas proceedings, but the Fifth Circuit rejected this argument under its then-settled precedent holding that ineffective state habeas counsel does not constitute an excuse for
procedural default--the very precedent that Martinez/Trevino has now undermined. Diaz v.
Quarterman, 228 F. App'x 417, 424 (5th Cir. 2007) (not designated for publication). Diaz currently
has a motion pending in the federal district court under Rule 60(b) of the Federal Rules of Civil
Procedure to reopen his federal habeas proceedings. Fed. R. Civ. P. 60(b). But relief under Rule
60(b) is hardly a foregone conclusion. See Adams v. Thaler, 679 F.3d 312, 322 (5th Cir. 2012)
(because Martinez represented "simply a change in decisional law[,]" Rule 60(b) relief was not
warranted, and the district court should not have granted a motion to stay execution).
5. Tex. Code Crim. Proc. art. 11.071, § 5(a)(1).
6. Id.
7. Ex parte Graves, 70 S.W.3d 103, 121 (Tex. Crim. App. 2002) (Price, J., dissenting); Ex
parte Foster, No. WR-65,799-02, 2010 WL 5600129, at *2 (Tex. Crim. App. delivered Dec. 30,
2010) (Price, J., dissenting) (not designated for publication).
8. Graves, supra, at 116 ("What the Legislature has not done . . . is evince any intention that
its choice of the term 'competent counsel' [in Article 11.071, Section 2(a)] as it applies to the
appointment of a habeas attorney also applies to the final product or services rendered by that
otherwise experienced and competent counsel.").
9. Ex parte Kerr, 64 S.W.3d 414, 419 (Tex. Crim. App. 2002).
10. See Ex parte McCarthy, No. WR-50,360-04, 2013 WL 3283148, at *7-8 (Tex. Crim. App.
delivered June 24, 2013) (Alcala, J., dissenting) (not designated for publication) ( "Unless this Court
revises its current approach, federal courts will now have the opportunity to decide a vast number
of ineffective-assistance claims de novo, without any prior consideration of those claims in state
court. The State's interest in finality of convictions would be better served by permitting state courts
to address these ineffective-assistance claims on the merits."). 
11. Id. at *10; see Ex parte Sledge, 391 S.W.3d 104, 107-110 (Tex. Crim. App. 2013)
(declining to recognize a judicial exception to Article 11.07, Section 4, of the Code of Criminal
Procedure that would allow consideration in a subsequent writ application of the merits of a claim
that the trial court lacked jurisdiction).
12. Sledge, supra, at 111.
13. 64 S.W.3d 414 (Tex. Crim. App. 2002).
14. Id. at 415-16.
15. Id. at 416.
16. See id. at 420 ("[T]he second habeas filing dealt solely with a stay of execution and an
allegation of ineffective assistance of original habeas counsel.").
17. Id.
18. 361 S.W.3d 633 (Tex. Crim. App. 2011).
19. Id. at 642.
20. Id. (quoting Kerr, supra, at 419).
21. Id. at 643.
22. Id. at 642.
23. Tex. Code Crim. Proc. art. 11.071, § 4A.