Joseph L. THOMPSON, a minor,
Appellant,

v.

The STATE of Texas, Appellee.

No. 12574.

Court of Civil Appeals of Texas,
Austin.

June 1, 1977.

Rehearing Denied June 22, 1977.

Ronald A. Piperi, Piperi, Roberts & Morris, Killeen, for appellant.

Patrick J. Ridley, County Atty., Bell County, Thomas S. Morgan, Asst. County Atty., Belton, for appellee.

SHANNON, Justice.

This appeal is from the judgment of the juvenile court of Bell County waiving its exclusive original jurisdiction and transferring appellant, Joseph L. Thompson, to district court for criminal trial. We will affirm the judgment.

The State alleged that on June 11, 1976, Thompson committed rape, aggravated sex-

ual abuse, aggravated robbery, aggravated kidnapping, and unauthorized use of a motor vehicle in Bell County. On that date, Thompson was fifteen years of age.

■ By two points of error appellant seeks to reverse the judgment. Appellant's first point is that the court's finding that there was little prospect of adequate protection of the public and the rehabilitation of the child by the use of procedures, services, and facilities currently available to the juvenile court was contrary to the great weight and preponderance of the evidence.

Texas Family Code Ann. § 54.02(f) (1975) provides that the juvenile court, in determining whether to waive its exclusive original jurisdiction and to transfer the child to district court for criminal trial, ". . . shall consider, among other matters:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) whether the alleged offense was committed in an aggressive and premeditated manner;

(3) whether there is evidence on which a grand jury may be expected to return an indictment;

(4) the sophistication and maturity of the child;

(5) the record and previous history of the child; and

(6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court."

To understand the point of error, the facts are summarized. Appellant's callous reign over the lives of others commenced during the early morning hours of June 11, 1976. Witness Y_____ was awakened by a stranger, appellant, knocking at the door of his apartment. Appellant told Y_____ that someone had tried to steal Y_____'s motorcycle. When Y_____ went outside, appellant pointed a pistol and demanded money. Y_____ gave money to appellant. Appellant then commanded that Y_____ start the motorcycle. When the machine failed to start, appellant ordered Y_____ at gunpoint to repair the machine.

During the time Y_____ was working on the motorcycle, witnesses M_____ and R_____ drove up. Appellant charged Y_____ that if Y_____ thought ". . . anything of your life and you think anything of their lives then you will play it cool." Appellant then put the pistol in his pocket.

R_____ went into her apartment. M_____ remained outside to assist Y_____ in the repair work. Appellant at that time brandished the firearm and demanded M_____'s money. M_____ tossed his wallet to him. Using Y_____, appellant gained entrance to R_____'s apartment. Appellant instructed Y_____, M_____, and R_____ to sit on the couch, and he directed R_____ to empty her purse for him.

Appellant commanded R_____ to disrobe and ordered M_____ and Y_____ to lie face down on the floor. Appellant forced R_____ at gunpoint to engage in sexual intercourse with him. Afterward, appellant demanded that Y_____ remove his clothing and have intercourse with R_____. Y_____, in obedience to appellant's dictates, simulated intercourse with R_____, as did M_____ a few minutes later when appellant ordered him to have intercourse with R_____. Then appellant instructed M_____ to get back on the floor, saying ". . . I ought to kick your damn face in."

After a period of aimless talk, appellant obtained the keys to R_____'s car and ordered M_____ to go with him as a hostage. Appellant enjoined R_____ and Y_____ before he departed that if they ever hoped to see M_____ again, they should not call the police.

Acting under appellant's orders, M_____ commenced driving the car. Shortly thereafter, members of the Killeen Police Department gave chase. During the chase M_____ jumped from the car, but appellant gained control of the steering wheel and eluded the pursuing police. Appellant

was finally arrested by military police on the Fort Hood reservation.

At trial the State called several witnesses, one being Frankie Eckroyd, the "Intake Officer" for the Bell County Juvenile Probation Office. As a part of the responsibilities of her position, Eckroyd had prepared a social evaluation and investigation concerning appellant. Based upon her investigation of appellant's situation and her knowledge of the facilities of the Texas Youth Council, the witness was of the opinion that the procedures and facilities available to the Council would not tend to rehabilitate appellant.

The State also called Larry Wendall Hays, a clinical psychologist, who had prepared a diagnostic study of appellant. During the course of his testimony, Dr. Hays testified that he had not observed a disposition on appellant's part to try and help rehabilitate himself.

In this connection it is of some importance to the resolution of this matter, that appellant has a history of aggressive and belligerent behavior. Those character traits were particularly pronounced during the past school year.

The evidence was that the facilities of the Texas Youth Council are "open-door" institutions. A juvenile committed to one of those institutions may easily escape if he wishes to do so. The evidence tended to show that appellant would choose to escape from an institution that was not guarded.

There was some testimony in support of appellant's position that appellant could be rehabilitated by the current services available to the juvenile court.

The court's order shows that the matters listed in § 54.02(f)(6) were considered and the order gives specific reasons for the waiver. Appellant's misdeeds were done in an aggressive manner over a sustained period of time. The infamous nature of appellant's acts reflects unfavorably upon the chances for appellant's rehabilitation. We have previously summarized much of the evidence from which the court could have reasonably concluded that the public would not have been adequately protected by an attempted rehabilitation of appellant and that an effort to rehabilitate appellant probably would not have been successful. Appellant's point of error is overruled.

Point of error two is that the juvenile court erred in finding that enough evidence existed that a grand jury might be expected to return at least *eight* indictments when there was no evidence to support the *two* contentions charging appellant with sexual abuse.

Whether there is evidence from which a grand jury might be expected to return an indictment is one factor to be considered by the juvenile court in determining whether to waive its jurisdiction and transfer the child to district court for criminal trial. § 54.02(f)(3).

For purposes of this opinion, we will assume that the grand jury would not return indictments for sexual abuse. Nevertheless, the evidence is such that the grand jury could be expected to return indictments for rape, aggravated robbery, aggravated kidnapping, and unauthorized use of a motor vehicle. The probability that the grand jury would return an indictment for any *one* of those offenses is sufficient for purposes of § 54.02(f)(3).

The judgment is affirmed.

Affirmed.