Hervey, J., filed an opinion in which Keller, P.J., Keasler, Richardson, Yeary, Newell, and Keel, JJ., joined.
*610 In Moon v. State , 451 S.W.3d 28 (Tex. Crim. App. 2014), we agreed with the court of appeals that a juvenile court's transfer order waiving its exclusive jurisdiction is subject to legal and factual-sufficiency appellate review. The issues in this case are whether our decision in Moon is retroactive, and if so, whether the transfer order in this case was legally and factually insufficient. We do not reach those issues, however, because Navarro has failed to show that his subsequent writ applications satisfy the Article 11.07 Section 4 subsequent-writ bar of the Texas Code of Criminal Procedure.[1] As a result, we dismiss his writ applications.
BACKGROUND
Navarro was fifteen years old when he was charged with murder and two counts of aggravated assault. He was at a party. When the party got too large, the host told a group of people, including Navarro, to leave because he did not know them. An altercation ensued during which three people were stabbed, including the host, who died at the scene. Navarro fled in a car with his friends and returned to his home later that night. The next morning, detectives showed up at Navarro's home after they were told that he may have stabbed the people at the party. Navarro was eventually taken into custody.
The State asked the juvenile court to waive its exclusive jurisdiction so that Navarro could be tried as an adult. The court granted the request, and Navarro was tried in district court. He was convicted of murder and one count of aggravated assault. The jury assessed punishment at ninety-nine years' imprisonment for the murder charge and twenty years' imprisonment for the aggravated assault charge. The judge ordered the sentences to run concurrently.
Navarro filed a timely motion for new trial, which was denied, and his convictions were affirmed on appeal. Navarro v. State , Nos. 01-11-00139-CR & 00140-CR, 2012 WL 3776372 (Tex. App.-Houston [1st Dist.] Aug. 30, 2012, pet. ref'd) (mem. op., not designated for publication). Later, he filed his initial writ applications claiming ineffective assistance of counsel. Both applications were denied without written order. Ex parte Navarro , Nos. WR-82,264-01 & -02 (Tex. Crim. App. Nov. 26, 2014). Subsequently, Navarro filed federal writ petitions, again claiming ineffective assistance *611 of counsel,[2] but those proceedings were stayed after Navarro filed the instant subsequent writ applications.
Navarro argues that he has satisfied the Section 4 subsequent-writ bar because the legal basis for his sufficiency claim was not recognized, nor could it have been reasonably formulated, when he filed his previously considered writ applications challenging his convictions. He also argues that the decision in Moon is retroactive and that the juvenile court's transfer order in his case was deficient because it failed to comply with our decision in Moon .[3] He further contends that he is entitled to relief because the district court never had jurisdiction over his case because the transfer order is insufficient. We filed and set these applications for submission to resolve,
(1) Whether [Navarro] may rely on this Court's opinion in Moon , and if so,
(2) Whether [Navarro] is entitled to habeas relief based on Moon .
We do not reach the submission issues, however, because Navarro cannot overcome the subsequent-writ bar. The legal basis for his sufficiency claim was available before Moon , including when he filed his initial writ applications challenging his convictions. And even if the legal basis had not already been recognized, Navarro could have reasonably formulated his claim based on United States Supreme Court and Texas appellate court precedent.
ARTICLE 11.07 § 4
Subsequent writ applications challenging a final felony conviction are governed by Article 11.07 § 4 of the Texas Code of Criminal Procedure. Under that statute, a court cannot consider the merits of a subsequent application unless it contains sufficient specific facts establishing that:
(1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
(2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.
TEX. CODE CRIM. PROC. art. 11.07 § 4(a)(1) - (2) (emphasis added).
A legal basis for a claim is "unavailable" for purposes of subsection (a)(1) "if the legal basis was not recognized by and could not have been reasonably formulated from a final decision of" the United States Supreme Court, a United States circuit court of appeals, or an appellate court of this state on or before the date of the applicant's previously considered application. Id. art. 11.07 § 4(b). A new factual basis for a claim is unavailable if it was not ascertainable using reasonable diligence on or before the date of the applicant's previously considered application Id. art. 11.07 § 4(c).
STANDARD OF REVIEW
The convicting court is the original factfinder, and we afford almost total deference to its findings of facts that are supported by the record. Ex parte Weinstein , 421 S.W.3d 656, 664 (Tex. Crim. App. 2014) (citing *612 Ex parte Chavez , 371 S.W.3d 200, 207 (Tex. Crim. App. 2012) (quoting Ex parte Reed , 271 S.W.3d 698, 727 (Tex. Crim. App. 2008) ). The same level of deference is afforded to a habeas judge's rulings on mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. Id. at 664. However, if after an independent review of the record, we conclude that the trial judge's findings and conclusions are not supported by the record, we may exercise our authority to make contrary or alternative findings and conclusions. Id. When the issues, as in this case, are mixed questions of law and fact that does not turn on credibility and demeanor, we review the findings and conclusions de novo . Id.
The habeas court found that,
(1) The juvenile court failed to "show its work" in its written transfer order, as required under Texas law. Tex. Fam. Code § 54.02(h) ; Moon v. State , 451 S.W.3d 28, 49 (Tex. Crim. App. 2014). Specifically, the juvenile court's transfer order fails to specifically state facts on which the juvenile court based its decision to waive jurisdiction. Id. at 49.
(2) Before Moon , [Navarro] could not have reasonably formulated his "show your work" instruction to courts of appeals for transfer orders based on Kent or the clear language of Article 54.02(h).
The habeas court recommends that we address the merits of Navarro's subsequent-writ application because he has shown a previously unavailable legal basis for his claim. After our de novo review, we disagree with the habeas court's findings and accordingly dismiss Navarro's applications.
ANALYSIS
Navarro contends that his transfer-order sufficiency claim was not a recognized legal basis for relief when he filed his previously considered writ applications and that the claim could not have been reasonably formulated based on the jurisprudence of the United States Supreme Court, the federal circuit courts of appeals, or the appellate courts of this state. For the reasons that follow, we disagree.
United States Supreme Court Precedent
1. The Legal Basis for Navarro's Claim Was Available When He Filed His Last Previously Considered Writ Application
Navarro concedes that the United States Supreme Court addressed the sufficiency of juvenile-transfer orders in Kent v. United States , 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), but he argues that Kent did not recognize the legal basis for his current claim and that his claim could not have been reasonably formulated from Kent .[4] According to Navarro, even though that case dealt with the sufficiency of juvenile-transfer orders, it did not impose a "show your work" requirement as we did in Moon . The State disagrees, arguing that the legal basis for Navarro's claim was recognized in Kent and that, even if Kent did not expressly recognize the legal basis upon which Navarro relies, he could have reasonably formulated his claim based on its reasoning because this *613 Court's "show your work" requirement was derived from a quote in that case.[5]
In Kent , the Supreme Court held that due process requires juvenile courts to include within their juvenile-transfer orders "a statement of the reasons or considerations therefor" for waiving exclusive jurisdiction. Id. The statement need not necessarily be formal or include "conventional findings of fact," but it must be sufficient to demonstrate that a full investigation has occurred, demonstrate that the waiver question was carefully considered by the juvenile court, and "set forth the basis for the order with sufficient specificity to permit meaningful review." Id. (emphasis added). A few years later, the law in Texas was changed so that, before a juvenile court could waive its exclusive jurisdiction, it must "state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court." Moon , 451 S.W.3d at 37 (explaining that the change in Texas law was meant to codify Kent ); Act of May 26, 1973, 63rd Leg., R.S., ch. 544, § 1, 1973 Tex. Gen. Laws 1460, 1460-77 (codified at TEX. FAM. CODE § 54.02(h) ). Based on the foregoing, we conclude the legal basis for Navarro's claim-whether the juvenile-transfer order in his case was insufficient-was recognized in 1966 by the United States Supreme Court.
2. Navarro Could Have Reasonably Formulated His Current Claim Based on Kent
Even if we assume, however, that Kent did not recognize the legal basis for Navarro's claim, he nevertheless could have reasonably formulated it from the reasoning in Kent . In Moon , we had to decide the applicable appellate standard of review when reviewing the sufficiency of juvenile-transfer orders. The only reason we had the occasion to answer such a question is because courts were already reviewing the sufficiency of juvenile-transfer orders. And, while we did state in Moon that a juvenile court must "show its work" in its transfer order, that merely recognized that a juvenile-transfer order cannot be sufficient if it does not support its waiver with specific reasons explaining why the court is waiving its exclusive jurisdiction. Moon , 451 S.W.3d at 47. Importantly, however, we also noted that a juvenile court's findings are reviewed under a "traditional sufficiency of the evidence" standard. Id.
Texas Appellate Courts Precedent
1. Texas Appellate Courts Recognized the Legal Basis for Navarro's Claim at Least as Early as 1975
Next, Navarro argues that the legal basis for his claim was not recognized by Texas law before he filed his previously *614 considered writ applications because Moon addressed several "previously unresolved questions concerning the specificity required of the juvenile court's transfer order[.]" Applicant's Brief on the Merits at 13 (citing Guerrero v. State , 471 S.W.3d 1, 3 (Tex. App.-Houston [14th Dist.] 2014, no pet.) ). He concedes that appellate courts have reviewed the sufficiency of juvenile-transfer orders for decades, but he contends that, because appellate courts before Moon routinely affirmed boilerplate juvenile-transfer orders that contained no case-specific evidence, his current claim could not have been reasonably formulated because it would have been summarily rejected. To support the latter assertion, Navarro directs us to Presiding Judge Keller's dissent in Moon , in which she stated that, for "almost forty years, the tendency among the courts of appeals has been to hold that a juvenile transfer order need not specify in detail the facts supporting the order." Moon , 451 S.W.3d at 52 (Keller, P.J., dissenting).
Navarro's concession that Texas appellate courts have been reviewing the sufficiency of juvenile-transfer orders is a fair one.[6] In Moon , we explained that, as far back as 1975, one Texas appellate court had noted that Section 54.02(h)"obviously contemplates that both the juvenile court's reasons for waiving its jurisdiction and the findings of fact that undergird those reasons should appear in the transfer order." Id. at 49 (citing In re J.R.C. , 522 S.W.2d 579, 582-84 (Tex. Civ. App.-Texarkana 1975, writ ref'd n.r.e.) ). In that case, the appellate court recognized that, when drafting Section 54.02 of the Texas Family Code, the legislature was guided by the Supreme Court's Kent decision. In re J.R.C. , 522 S.W.2d at 583. A statement we reiterated forty-two years later in Moon . Moon , 451 S.W.3d at 37.
Based on this, we conclude that the legal basis for Navarro's claim-that the transfer-order in his case was insufficient-had been recognized by Texas appellate courts before Navarro filed his claim. In re J.R.C. , 522 S.W.2d at 582-84.
2. Navarro Could Have Reasonably Formulated His Current Claim Based on Existing Texas Appellate Court Jurisprudence
According to Navarro, even though Texas appellate courts have entertained sufficiency challenges to juvenile-transfer orders for decades, his claim could not have been reasonably formulated because the courts of appeals routinely denied such claims. Based on the language of the statute, Navarro's argument is without merit. TEX. CODE CRIM. PROC. art. 11.07 § 4(a)(1).
To satisfy the Section 4(a)(1) subsequent-writ bar when claiming a new legal basis, the applicant must show (1) that the legal basis was not recognized and (2) that the claim could not have been reasonably formulated from the jurisprudence of the United States Supreme Court, federal circuit courts of appeals, or Texas appellate courts. Id. art. 11.07 § 4(b). Even if we *615 assume that Navarro could not have reasonably formulated his sufficiency claim because such claims were routinely denied, he freely admits that the legal basis for his sufficiency challenge was recognized long ago. He has even provided a number of citations. See Matter of T.D. , 817 S.W.2d 771, 776-77 (Tex. App.-Houston [1st. Dist.] 1991, writ denied) ; In re I.B. , 619 S.W.2d 584, 587 (Tex. Civ. App.-Amarillo 1981, no writ) ; Appeal of B.Y. , 585 S.W.2d 349, 351 (Tex. Civ. App.-El Paso 1979, no writ).
The purpose of Section 4(a)(1) is to prevent the abuse of the post-conviction writ process by prohibiting courts from addressing the merits of subsequent-writ applications that raise claims that could have already been raised, either because the legal basis for the claim had already been recognized, or because the claim could have been rationally fashioned from certain jurisprudence even if the legal basis had not yet been recognized. The statute does not, as Navarro argues, allow an applicant to surmount the "new legal basis" subsequent-writ bar by showing that courts frequently deny the claim he seeks to bring. Legal sufficiency challenges are also routinely denied, but when a court enters an acquittal due to insufficient evidence, the court's decision does not constitute a new legal basis allowing defendants an opportunity to raise a sufficiency claim for the first time in a subsequent-writ application. In short, the likelihood of a claim's success is irrelevant to whether the legal basis upon which an applicant relies is considered "new."
Section 4(a)(2)
Navarro also argues that we can consider the merits of his claims through the Section 4(a)(2) innocence gateway. According to him, a defendant has a constitutional right to be convicted by a court of competent jurisdiction, Frank v. Mangum , 237 U.S. 309, 326, 35 S.Ct. 582, 59 L.Ed. 969 (1915), and in this case the district court did not have subject-matter jurisdiction because the transfer order waiving the juvenile court's exclusive jurisdiction was insufficient. Thus, he concludes, he satisfies the Section 4(a)(2) exception because, but for the violation of his federal constitutional right to be convicted by a court of competent jurisdiction, no rational jury could have convicted him. For support, he cites Judge Alcala's dissenting opinion in Ex parte Sledge , 391 S.W.3d 104, 116 (Tex. Crim. App. 2013) (Alcala, J., dissenting), in which she made an identical argument.[7] The State responds that Judge Alcala's opinion is not controlling law because her opinion was a dissent. It further contends that the Court has already rejected Navarro's argument in Sledge , and since Section 4(a)(2) has not been modified subsequent to Sledge , Navarro's argument is without *616 merit.[8] For its part, the habeas court concluded that an error under Moon is jurisdictional, that such claim "can never be waived," and that the judgment of conviction in this case is void.
In Ex parte Sledge , Sledge alleged in a subsequent writ application that the court lacked subject-matter jurisdiction to revoke his deferred-adjudication supervision because it did so based on a capias issued after the period of supervision had expired. Id. at 105-06. We concluded that we could not consider the merits of his jurisdictional argument in his subsequent writ application because Sledge did not assert a new legal or factual basis under Section 4(a)(1) of the abuse-of-writ bar. Id. at 106-07. We also addressed the innocence-gateway exception because it was raised by Judge Alcala in her dissent. Id. at 110-11. Judge Alcala would have held that Sledge met the innocence-gateway exception under Section 4(a)(2) because, but for the violation of his federal constitutional right to be tried by a court of competent jurisdiction, the judge could not have found him guilty beyond a reasonable doubt. Id. at 116-17 (Alcala, J., dissenting). As Navarro does, Judge Alcala relied on Mangum to support her position.
The State correctly points out, however, that the majority in Sledge considered Judge Alcala's argument (which Navarro is now reurging) and rejected it because, even if Sledge had alleged sufficient specific facts to show that the court's lack of subject-matter jurisdiction was constitutional error, he still could not meet the Section 4(a)(2) innocence-gateway because he did not also allege sufficient specific facts to show that he is actually innocent of the offense. Id. at 107 n.14 ; Brooks , 219 S.W.3d 396, 401 (Tex. Crim. App. 2007). Unlike Sledge, Navarro has alleged that he suffered a constitutional violation, but like Sledge, Navarro does not claim that he is actually innocent of the offense. Thus, based on our decision in Sledge , we are precluded from addressing the merits of Navarro's claims under Section 4(a)(2). Sledge , 391 S.W.3d at 116 at 107 ; Brooks , 219 S.W.3d at 401.
CONCLUSION
Because Navarro cannot overcome the subsequent-writ bar in this case, we do not reach the merits of his post-conviction writ application, and we dismiss his applications for writs of habeas corpus.
Alcala, J., filed a dissenting opinion in which Walker, J., joined.
May a fifteen-year-old child be treated as an adult in the Texas criminal-justice system and sentenced to ninety-nine years in prison under circumstances in which the waiver of the juvenile court's jurisdiction cites no evidence or details in support of its order? This Court's majority opinion today holds that this situation is permissible in the case of Miguel Angel Navarro, applicant, because he did not raise his complaint about the juvenile court's transfer order sooner, and it dismisses his complaint as an unauthorized subsequent habeas application. Rather than dismiss his applications, I would hold that applicant has shown that there is a new legal basis for his claim that permits substantive review of his subsequent habeas applications, and I would address the merits of his complaint that contends that the substantive standards this Court set forth in Moon v. State should be applied retroactively to his case.
*617 451 S.W.3d 28 (Tex. Crim. App. 2014). I, therefore, respectfully dissent.
As the habeas court determined in its findings of fact and conclusions of law in this case, the standards set forth by this Court in Moon constitute a new legal basis that was not previously available to applicant until after his original writ application had been filed.[1] In Moon, this Court held, among other matters, that the transfer order issued by the juvenile court in the underlying matter was so insufficient as to make it invalid, and thus the district court lacked jurisdiction to render the conviction that had been obtained against Moon, making the judgment void. Id. at 51-52. Moon expressly determined that the waiver of a juvenile court's jurisdiction required more than check marks on forms or the mere general recitation of the factors set forth in the Texas Family Code. Id. ; see also TEX. FAM. CODE § 54.02(f).[2] Rather, in Moon , this Court explained that, for the evidence supporting the transfer to be factually and legally sufficient, a juvenile court's transfer order must include specific findings of fact and identify the particularized reasons for the waiver in the written order itself. Moon, 451 S.W.3d at 50-51. In support of this conclusion, we cited the provision in the Texas Family Code requiring that the juvenile court " 'shall state specifically in its order its reasons for waiver and certify its action, including the written order and findings of the court[.]' " Id. at 49 (quoting TEX. FAM. CODE § 54.02(h) ). Examining this language and citing the relevant legislative history, we stated that the statute "obviously contemplates that both the juvenile court's reasons for waiving its jurisdiction and the findings of fact that undergird those reasons should appear in the transfer order." Id. We reasoned that, in order to afford defendants the opportunity for meaningful appellate review of their transfer orders, the juvenile court should "take pains to 'show its work,' as it were, by spreading its deliberative process on the record, thereby providing a sure-footed and definite basis from which an appellate court can determine that its decision was in fact appropriately guided by the statutory criteria, principled, and reasonable[.]" Id. To hold otherwise, we stated, would force the appellate court to speculate as to the juvenile court's reasons for finding the transfer to be appropriate or the facts the juvenile court found to substantiate those reasons. Id. Applying these principles to Moon's case, we concluded that the juvenile court in that case did not "show its work," and, thus, the evidence was insufficient to support the transfer order. Id. at 50. We observed that the only findings stated on the transfer order in Moon's case were generic and constituted a bare recitation of *618 the statutory factors in Section 54.02(f). Id. at 50-51. Given this, we held that the order had failed to make the kind of "case-specific findings of fact" that were required to support the sufficiency of the evidence, and we affirmed the court of appeals's judgment that had vacated Moon's conviction and returned his case to juvenile court. Id. at 51.
The significance of this Court's holding in Moon is not that a transfer order must be supported by sufficient reasons for the transfer. As the majority opinion observes, that basic principle was in place long before Moon was decided. But, Moon announced a new rule governing the nature of the sufficiency analysis in this context-in particular, it required that, to be supported by sufficient evidence, a juvenile court's transfer order must include case-specific facts to support the particularized reasons for the transfer in that case. Moreover, Moon indicated that the absence of such specific facts would likely deprive a defendant of the opportunity for meaningful appellate review of the transfer order. Given these aspects of Moon that altered the nature of sufficiency review in juvenile transfer cases, I would hold that that case is a new legal basis for applicant's complaint that the trial court lacked jurisdiction in his case, and, therefore, that this Court may properly consider the underlying merits of that complaint in the instant subsequent habeas applications.
I disagree with this Court's majority opinion that determines that the underlying theory supporting Moon was reasonably available to applicant when he filed his initial habeas application, given the Supreme Court's holding in Kent v. United States that juvenile-transfer orders must include a statement of the reasons or considerations for waiving exclusive jurisdiction. 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). Applicant contends that Kent ' s sufficiency requirement for juvenile-transfer orders did not impose the "show your work" requirement that this Court required in Moon , and I agree with that suggestion. In Kent , the Supreme Court concluded that, "as a condition to a valid waiver order, [the juvenile] was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision." Id. at 557, 86 S.Ct. 1045. The Court further stated,
Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not 'assume' that there are adequate reasons, nor may it merely assume that 'full investigation' has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review.
Id. at 561, 86 S.Ct. 1045.
The difference between Kent and Moon was that in Kent , the juvenile court waived jurisdiction based only on the statement that a "full investigation" had been conducted, whereas in Moon , the juvenile court did actually explain the basis for its *619 waiver of exclusive jurisdiction, but it did so with a form order that corresponded with the generic reasons set forth in the Family Code.[3] Although Kent referred to the requirement of a juvenile court providing specific reasons in support of its transfer order, that case wavered on whether formal findings of fact were required, it did not define the level of specificity that would be required of such findings, and it did not expressly state that case-specific findings must be included in the transfer order itself. Moon thus constituted a significant expansion of Kent by disallowing form orders and by requiring case-specific fact findings to support a transfer order. It is true that Moon was formulated from the Supreme Court's decision in Kent , but it does not necessarily follow that this applicant could have reasonably formulated his complaint from the Kent decision. Moon was decided by this Court with a vote of six to three, and thus, it was not so clear-cut that Moon's complaint about the lack of specific facts would be sustained. As the dissenting opinion in Moon argued, "For almost forty years, the tendency among the courts of appeals has been to hold that a juvenile transfer order need not specify in detail the facts supporting the order." Moon , 451 S.W.3d at 52 (Keller, P.J., dissenting). The dissenting opinion called the lower court's decision in Moon "unconventional." Id. at 53. The dissenting opinion argued that Kent did not require specific fact findings to support a transfer order. Given that the law was apparently unsettled following Kent with respect to the information that must be included in a transfer order, I agree with applicant's assertion that Moon broke new ground in this area and that he should be permitted to now rely on that decision as a new legal basis for seeking habeas relief.
In sum, I would not hold, as this Court's majority opinion does, that applicant could have reasonably formulated his complaint regarding the deficient transfer order in this case based on the Supreme Court's opinion in Kent , without the benefit of this Court's more recent decision in Moon . I would hold that Moon satisfies the new-legal-theory requirement for subsequent habeas applications, and I would address the substantive arguments applicant presents regarding whether Moon should be retroactively applied to his case. Because this Court dismisses these applications as procedurally barred without considering the merits of applicant's complaint, I respectfully dissent.[4]

This provision governs when a court can consider the merits of a subsequent writ of habeas corpus application. As it pertains to this case, the statute states, in relevant part,
(a) If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
(1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous applications[.]
Tex. Code Crim. Proc. art. 11.07 § 4(a)(1).

Navarro v. Stephens , No. 4:15-CV-00352 (S.D. Tex. filed Feb. 6, 2015).

Navarro also asserted that the State relied on false testimony to secure his convictions in light of new scientific evidence that was not available at trial, but that claim was denied.

In addition to the parties' briefs, three amicus briefs have been filed. Texas Appleseed reurges Navarro's argument that his sufficiency claim could not have been reasonably formulated based on Kent because our decision in Moon imposed new, more onerous requirements. Pro se author Jeff Leggett also makes the same argument, but he directs us to Presiding Judge Keller's statements in Moon , to support his contentions. The third brief, filed by the Juvenile Law Center, does not address the Section 4 subsequent-writ bar.

Although we discuss Kent in more detail, the entirety of the quote from the State's brief reads,
[The appellate court] must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not assume that there are adequate reasons, nor may it merely assume that full investigation has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. We do not read the [relevant District of Columbia] statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of full investigation has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review.
Kent , 383 U.S. at 561, 86 S.Ct. 1045.

See, e.g. , Rivera v. State , No. 05-06-00026-CR, 2007 WL 3245610, at *1 (Tex. App.-Dallas Nov. 5, 2007, no pet.) (not designated for publication); Faisst v. State , 105 S.W.3d 8, 12 (Tex. App.-Tyler 2003, no pet.) ; In the Matter of G.F.O. , 874 S.W.2d 729, 731-32 (Tex. App.-Houston [1st Dist.] 1994, no writ) ; Matter of D.L.N. , 930 S.W.2d 253, 257 (Tex. App.-Houston [14th Dist.] 1996, no writ) ; C.M. v. State , 884 S.W.2d 562, 563 (Tex. App.-San Antonio 1994, no writ) ; Matter of T.D. , 817 S.W.2d 771, 774 (Tex. App.-Houston [1st Dist.] 1991, writ denied) ; Matter of C.C.G. , 805 S.W.2d 10, 15 (Tex. App.-Tyler 1991, writ denied) ; Thompson v. State , 552 S.W.2d 618, 619 (Tex. Civ. App.-Austin 1977, no writ) ; Matter of G. B. B. , 572 S.W.2d 751, 755 (Tex. Civ. App.-El Paso 1978, writ ref'd n.r.e.) ; J. D. P. v. State , 609 S.W.2d 868, 871 (Tex. Civ. App.-Texarkana 1980, no writ).

Although Navarro relies on Judge Alcala's dissenting opinion in Sledge for the proposition that a jurisdictional claim can be raised in a subsequent writ application, he also argues that Sledge "did not involve a jurisdictional claim" and that "as the Court later stressed in Moss , there is a crucial difference between a claim involving constitutional rights that can be forfeited on habeas corpus due to lack of action and a claim based upon lack of jurisdiction, which cannot be forfeited." Applicant's Brief on the Merits at 34 n.8.
A cursory examination of our decision in Sledge , however, shows that the only claim advanced in that case was a jurisdictional one. As for Navarro's contention regarding Moss , we disagree. If anything, in Moss we reaffirmed our holding in Sledge when we stated that "we caution individuals seeking habeas relief in a subsequent writ application that Sledge continues to bar an applicant from obtaining relief on a jurisdictional claim in a subsequent application if the applicant cannot overcome applicable procedural bars." Ex parte Moss , 446 S.W.3d 786, 789-90 (Tex. Crim. App. 2014).

The State also raises some statutory arguments to support its position, but we need not address those given our disposition of this issue based on our decision in Sledge .

Pursuant to Code of Criminal Procedure Article 11.07, a legal basis is "new" for purposes of overcoming the bar on subsequent writs if "the legal basis was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before" the date the applicant filed the previous application. Tex. Code Crim. Proc . art. 11.07, § 4(b).

Texas Family Code Section 54.02(f) states,
In making the determination required by Subsection (a) of this section, the court shall consider, among other matters: (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person; (2) the sophistication and maturity of the child; (3) the record and previous history of the child; and (4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.
Tex. Fam. Code § 54.02(f).

See Tex. Fam. Code § 54.02(f).

Given my view that applicant has satisfied the new-legal-basis requirement for overcoming the bar on subsequent writs, I need not address his argument, based on my dissenting opinion in Ex parte Sledge , that he has also satisfied the innocence-gateway exception to the Section 4 bar. See Ex parte Sledge , 391 S.W.3d 104, 112 (Tex. Crim. App. 2013) (Alcala, J., dissenting); Tex. Code Crim. Proc . art. 11.07, § 4(a)(1), (a)(2).