

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-89,128-01

## EX PARTE STEVEN THOMAS, Applicant

## ON APPLICATION FOR WRIT OF HABEAS CORPUS
## CAUSE NO. 739545 IN THE 180TH DISTRICT COURT
## HARRIS COUNTY

**NEWELL, J., delivered the opinion of the in which KELLER, P.J., HERVEY, RICHARDSON, KEEL, WALKER, SLAUGHTER and MCCLURE, JJ., joined. YEARY, J., filed a concurring opinion.**

A juvenile court may waive its exclusive original jurisdiction and transfer a juvenile case to the appropriate district court for criminal proceedings if certain statutory and constitutional requirements are met. Applicant Steven Thomas, at 16, committed capital murder. When he was 19, the juvenile court waived its exclusive jurisdiction and transferred Applicant's case to district court, where Applicant pleaded guilty to a lesser charge of murder. Decades passed. Applicant did not appeal his

transfer or his case or file a writ of habeas corpus.  Then, this Court decided *Moon v. State*, 451 S.W.3d 28 (Tex. Crim. App. 2014).  In that case, we held that if an order waiving juvenile jurisdiction does not contain factually-supported, case-specific findings, then the order is invalid.[1]  As discussed below, that holding necessarily means that, in such circumstances, a district court never acquires jurisdiction.[2]  Based upon *Moon*, Applicant argues that because the order waiving juvenile jurisdiction did not contain factually-supported, case-specific findings, it was invalid, and thus the district court never acquired jurisdiction.[3]

But the type of findings *Moon* requires are neither grounded in the text of the transfer statute,[4] nor in *Kent v. United States*, 383 U.S. 541 (1966), the Supreme Court precedent that we purportedly relied upon in *Moon*.  Requiring them may be good policy, but the lack of case-specific

---

[1] *Moon*, 451 S.W.3d at 49.

[2] *See, e.g., Ex parte Moon*, ___ S.W.3d ___, 2020 WL 827424, at *8 (Tex. App.—Houston [1st Dist.] Feb. 20, 2020, no pet.) ("The Court of Criminal Appeals answered its own question about whether or not the juvenile court had validly waived its jurisdiction when it, without qualification, affirmed our holding that the juvenile court had not.").

[3] The trial court recommends denying relief on the claim, finding that it is a "record claim" that could have been raised on appeal.  We ordered the application be filed and set and asked for briefing on "whether this Court's opinion in *Moon* provides a ground for relief that is cognizable on post-conviction habeas corpus, and whether *Moon* should apply retroactively." *Ex parte Thomas*, WR-89,128-01, 2019 WL 361675, at *1 (Tex. Crim. App. Jan. 30, 2019) (not designated for publication).

[4] Based on the offense date, the 1994 version of Family Code applies to Applicant's case. References to the code from here on are to that version.

findings has nothing to do with jurisdiction, fundamental constitutional rights, or even the transfer statute itself. The juvenile court's transfer order in this case may have lacked factually-supported, case-specific findings, but that did not make that order invalid or deprive the district court of jurisdiction.[5] Consequently, Applicant is not entitled to habeas corpus relief.

### Background

On August 19, 1994, the Houston Police Department (HPD) responded to a home invasion double-murder. Several assailants had entered a home yelling "police" and demanding drugs and money. They bound the victims with duct tape, ransacked the home, and fired multiple firearms. Six victims—two adult females and four children—survived; two male victims, Everett Cooper and Joseph Smith, died of gunshot wounds and asphyxia as a result of gagging and suffocation.

A few days later, there was an armed bank robbery in Normangee, Texas.[6] During flight from the bank robbery, the suspects murdered an

---

[5] As part of their cognizability arguments, the parties disagree over whether the lack of case-specific, factual findings were necessary to confer jurisdiction in the district court. State's Br. 29-30; Applicant's Br. 14, 18. These arguments require us to examine *Moon v. State* to determine whether factually-supported, case-specific findings are necessary for a valid waiver of a juvenile court's jurisdiction.

[6] *United States v. Thomas*, 91 F.3d 139 (5th Cir. 1996) (per curiam), *cert denied*, 519 U.S. 985 (1996) ("Hashim Thomas, Julius Sephus, and Steven Thomas conspired with 9 other

elderly woman so they could steal her car. HPD later figured out that most of the federal bank robbers, including Applicant, committed the August 19, 1994 home invasion double-murder in Houston. Applicant was, at the time of both crimes, 16.

On September 8, 1994, Applicant surrendered to FBI authorities. Applicant turned 17 later that month and was certified to stand trial in federal court as an adult. A jury convicted him of bank robbery, in violation of 18 U.S.C. § 2113(a) & (d), and use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1). The federal district court sentenced him to 300 months' imprisonment for bank robbery and to 60 months' imprisonment for the firearm conviction, to be served consecutively. His convictions were affirmed on direct appeal,[7] and the Fifth Circuit Court of Appeals issued final mandate in July 1996.[8]

One month later, in August 1996, the State filed a petition in the Harris County juvenile court alleging that Applicant committed capital

---

individuals to rob the Normangee State Bank in Normangee, Texas. . . . The uniform testimony of Steven Thomas' co-conspirators established that: Steven entered the bank first, carried a gun, drew the gun once he was inside the bank, and emerged from the bank's vault with his arms full of money.").

[7] *Id.*

[8] *United States v. Thomas*, 203 F.3d 350 (5th Cir. 2000) (affirming district court's determination that Thomas' § 2255 motion was untimely).

murder while under the age of 17, and the clerk assigned it a juvenile cause number. Applicant was 18. The State also asked the juvenile court to waive juvenile jurisdiction and certify the proceedings to district court. Counsel was appointed. On October 14, 1996, the State filed an amended petition and amended motion to waive jurisdiction. Applicant meanwhile had turned 19. On October 21, 1996, Applicant was brought from federal prison to the 315th Juvenile District Court. The juvenile court ordered a complete diagnostic study; a social evaluation; and a full investigation of Applicant, his circumstances, and the circumstances of the alleged offenses, and reset the case. Applicant refused the psychological and psychiatric evaluations on the advice of his attorney.

After the study, a hearing on the waiver of jurisdiction, and legal briefing on the due-diligence aspect of transfer,[9] the 315th Juvenile District Court waived its jurisdiction and transferred Applicant's case to the 180th District Court. The transfer order was three pages long.[10]

---

[9] The purpose of this briefing was to help the juvenile court decide whether, "from a preponderance of the evidence that after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person[.]" TEX. FAM. CODE § 54.02(j)(4).

[10] The order waiving jurisdiction in juvenile court and transferring Applicant to the Criminal District Court of Harris County, Texas, for criminal proceedings referenced:
- that the Section 54.02 hearing that was held;
- that, before that, the Court had ordered and obtained a diagnostic study, social evaluation, a full investigation of the child, his circumstances, and the circumstances of the alleged offenses;

- that counsel was appointed before the hearing and was given access and time to consider all written matter to be considered by the Court in making the transfer decision;
- that Applicant, his counsel, his father and his mother were present;
- that Applicant was charged in the amended petition with violation of a penal law of the grade of felony if committed by an adult, to wit: CAPITAL MURDER (FIVE COUNTS);
- that there has been no adjudication of these offenses;
- that Applicant was between fifteen and seventeen years of age at the time of the commission of the alleged offenses;
- that there is probable cause to believe that Applicant committed the offenses alleged and that because of the seriousness of the offenses, the welfare of the community requires criminal proceedings;
- that, by a preponderance of the evidence that after due diligence of the State, it was not practicable to proceed in juvenile court before the Applicant's 18 birthday;
- that the court considered:
  1. Whether the alleged offenses were against person or property, with the greater weight in favor of wavier given to offenses against the person;
  2. Whether the offenses were committed in an aggressive and premeditated manner;
  3. Whether there is enough evidence upon which the grand jury may be expected to return an indictment;
  4. The sophistication and maturity of the child;
  5. The record and previous history of the child; and
  6. The prospects of adequate protection of the public and the likelihood of reasonable rehabilitation of the child by use of procedures, services and facilities currently available to the Juvenile Court;
- that Applicant is of sufficient sophistication and maturity to have intelligently, knowingly and voluntarily waived all constitutional and statutory rights heretofore waived and to have aided in the preparation of his defense;
- that the offenses alleged to have been committed were against the person of another and were committed in an aggressive and premeditated manner;
- that there has been no adjudication of said offenses;
- that evidence was presented concerning the alleged offenses upon which a grand jury may be expected to return an indictment;
- that the evidence and reports heretofore presented to the Court demonstrate to the court that there is little, if any prospect of adequate protection of the public and likelihood of reasonable rehabilitation of Applicant by use of procedures, services and facilities currently available to the Juvenile Court;
- that the Judge instructed the child, his parents, and the child's attorney, of the child's right to appeal to the court of appeals, the right to representation by Counsel on appeal, and of the child's right to appointment of an attorney for appeal if an attorney cannot be obtained

Applicant did not appeal the transfer of jurisdiction.[11]  The grand jury indicted Applicant for capital murder, and, still 19, he pleaded guilty to the reduced charge of murder and was sentenced to life imprisonment. Applicant did not appeal the conviction.

## Analysis

Applicant now argues that the juvenile court's failure to satisfy the requirements set out in *Moon* rendered the entire criminal proceeding void because the district court never had jurisdiction over him.  Claims that a juvenile transfer order is void are cognizable on a writ of habeas corpus because they involve the jurisdiction of the trial court to hear a case.[12]  Similarly, claims that a juvenile court wholly failed to conduct an

---

because of indigence; and
* that the attorney was instructed that if the child and his parents express a desire to appeal, the attorney shall file a notice of appeal with this Court and inform this Court whether or not he will handle the appeal.

[11] Juvenile appeals are governed by Section 56.01.  Prior to 1996, a juvenile respondent was able to appeal a juvenile transfer order as a civil matter.  *See* Acts 1991, 72nd Leg., ch. 680 (H.B. 889), § 1, eff. Sept. 1, 1991.  In 1996, the Legislature deleted the section authorizing the appeal from a juvenile respondent regarding a transfer order under Section 54.02 of the Family Code.  *See* Acts 1995, 74th Leg., ch. 262, § 48 (H.B. 372), eff. Jan. 1, 1996.  In 2015, the Legislature amended the statute again to re-authorize an appeal from a juvenile respondent regarding a transfer order.  *See* Acts 2015, 84th Leg., ch. 74 (S.B. 888), § 3, eff. Sept. 1, 2015. *See also* Misc. Docket No. 15-9156 (Tex. Aug. 28, 2015).

[12] *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994) (habeas corpus is reserved for those instances in which there is a jurisdictional defect in the trial court which renders the judgment void or for denials of fundamental or constitutional rights); *see also Ex parte Moss*, 446 S.W.3d 786, 789, 793  (Tex. Crim. App. 2014) ("[W]hen a court acts without jurisdiction, such as by entering a judgment without the necessary authority to do so, the purported action taken by the court is void;" concluding that claim that the trial court lacked jurisdiction to revoke deferred adjudication community supervision after period of supervision expired was cognizable on habeas review).

examination and hearing before transferring a juvenile case to district court may be cognizable if the failure results in an arbitrary deprivation of liberty in violation of the fundamental, constitutional right to due process.[13]  But factually-supported, case-specific findings in the transfer order are not required by the statute to bestow jurisdiction or the constitution as a matter of fundamental, constitutional due process. Consequently, Applicant's challenge to the jurisdiction of the trial court lacks merit, and we deny relief.

## Cognizability

It is axiomatic that review of jurisdictional claims or denials of fundamental constitutional rights are cognizable in post-conviction habeas corpus proceedings.[14] The core reason why jurisdictional issues can never be waived (at least for purposes of raising them in an application for a writ of habeas corpus) is because a court that lacks subject matter jurisdiction has no authority to fix errors in a judgment or order that was entered without subject-matter jurisdiction.[15]   The presumption of

---

[13] See, e.g., *Ex parte Carmona*, 185 S.W.3d 492, 495–96 (Tex. Crim. App. 2006) (concluding that defendant's claim that his community supervision was revoked solely on perjured evidence— and therefore without due process of law—was cognizable in habeas corpus "because habeas review is appropriate for denials of fundamental or constitutional rights").

[14] *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (en banc, opinion on reh'g).

[15] *See, e.g.*, *Ex parte McKay*, 199 S.W. 637, 639 (Tex. Crim. App. 1917).

regularity of a judgment does not apply if the court lacked jurisdiction.[16] This principle is of universal application and has been applied in courts of Texas throughout their history.[17] Even the oft-stated holding that the writ of habeas corpus should not be used as a substitute for appeal pre-supposes that the judgment being reviewed was entered by a court with jurisdiction.[18]

Generally, subject-matter jurisdiction is never presumed and cannot be waived.[19] The Texas Constitution gives our Legislature the power to prescribe the jurisdictions of the courts.[20] Our Legislature has granted courts designated as juvenile courts with original and exclusive jurisdiction over juvenile proceedings.[21] The burden is upon the State to prove transfer is appropriate.[22] The transfer of a juvenile offender from

---

[16] *Id.*

[17] *Id.*

[18] *See, e.g.*, *Ex parte Loper*, 219 S.W.2d 81, 82 (Tex. Crim. App. 1949) (noting that habeas corpus is not a substitute for appeal after determining that the convicting court had jurisdiction and the power to render the judgment).

[19] *See, e.g.*, *United States v. Cotton*, 535 U.S. 625, 630 (2002) ("This latter concept of subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.").

[20] TEX. CONST. art. 5, §§ 1, 8.

[21] TEX. FAM. CODE §§ 51.04, 54.02.

[22] *See, e.g.*, *Matter of Honsaker*, 539 S.W.2d 198, 201 (Tex. Civ. App.—Dallas 1976, writ ref'd. n.r.e.).

juvenile court to criminal court for prosecution as an adult should be regarded as the exception, not the rule; the operative principle is that, whenever feasible, children and adolescents below a certain age should be "protected and rehabilitated rather than subjected to the harshness of the criminal system."[23]  For a juvenile court to validly waive jurisdiction and transfer a case to a criminal court, it must satisfy the terms of the statute.

### *Moon*'s Holding Was Both Jurisdictional And Wrong

Given this backdrop, Applicant understandably argues that the juvenile court's failure to satisfy the requirements set out in *Moon* rendered his entire criminal proceeding void.  After all, we affirmed the court of appeals' holding in *Moon* to that effect.[24]  We did, in a parting footnote, observe that neither party had challenged the disposition that the case remained "pending in the juvenile court."[25]  But we then went on to leave the question—"pending for what?"—to the juvenile court.[26]  Further, we rejected the argument that we lacked authority to order the

---

[23] *Hidalgo v. State*, 983 S.W.2d 746, 754 (Tex. Crim. App. 1999).

[24] *Moon v. State*, 410 S.W.3d 366, 378 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 451 S.W.3d 28 (Tex. Crim. App. 2014).

[25] *Moon*, 451 S.W.3d at 52 n.90.

[26] *Id.*

court of appeals to remand the case to the juvenile court.[27]   As we

explained:

> The juvenile court has either validly waived its exclusive
> jurisdiction, thereby conferring jurisdiction on the criminal
> courts, or it has not.  We cannot order the court of appeals to
> remand the cause to the juvenile court unless and until we
> affirm its judgment that the juvenile court's transfer order was
> invalid and that the criminal courts therefore never acquired
> jurisdiction.  Unless and until the transfer order is declared
> invalid, the criminal courts retain jurisdiction, and the juvenile
> court lacks jurisdiction to retroactively supply critical findings
> of fact to establish whether or not it has validly waived its
> jurisdiction.[28]

Given that we affirmed the court of appeals' judgment dismissing the

case for a lack of jurisdiction, we necessarily held that the criminal district

court lacked jurisdiction.[29]  This is how courts of appeals reviewing *Moon*

have understood the case as well.[30]   But, as discussed below, *Moon*'s

court-made requirement—that transferring juvenile courts set out specific

---

[27] *Id.*

[28] *Id*.

[29] *Id.* at 52.

[30] *See* Applicant's Br. 14–15 (noting that courts of appeals reviewing *Moon* have ruled that a transfer order not containing the recitation of the case-specific factual basis fails to confer jurisdiction to the criminal district court) (citing *Guerrero v. State*, 471 S.W.3d 1, 4 (Tex. App.—Houston [14th] 2014, no pet.); *Yado v. State*, 01-14-00578-CR, 2015 WL 3982045, at *4–5 (Tex. App.—Houston [1st Dist.] June 30, 2015, no pet.) (mem. op., not designated for publication); *Matter of J.G.S.*, 03-16-00556-CV, 2017 WL 672460, at *5 (Tex. App.—Austin Feb. 17, 2017, no pet.) (opin. on reh'g) (mem. op., not designated for publication); *Ex parte Arango*, 518 S.W.3d 916, 922 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd)).  *See also Ex parte Moon*, 2020 WL 827424, at *8.

fact-findings in the transfer order for transferring the case—is not supported by the text of the statute nor United States Supreme Court precedent.[31]

### The Text of the Juvenile Transfer Statute Does Not Require Detailed Fact-Findings to Establish Jurisdiction

Under Section 54.02(a), a juvenile court may transfer to the criminal district court for trial a case involving a person who was 15 years old or older at the time he is alleged to have committed a felony grade offense but who remains a child at the time of transfer.[32] But if the person who is alleged to have committed a felony as a child has reached his eighteenth birthday, the juvenile court must make the transfer under Section 54.02(j).[33] Section 54.02(a) imposes requirements for transfer to the criminal district court that Section 54.02(j) does not.

Under Section 54.02(a), the juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court

---

[31] *See Moon*, 451 S.W.3d at 53–54 (Keller, P.J., dissenting) ("None of the provisions [in the statute] require the juvenile court to recite the *facts* upon which its transfer holding is based. Rather, the statutory scheme merely directs the juvenile court to state the *reasons* for the waiver....[*Kent*] did not hold that a juvenile court was required to set forth in its order the facts that supported its transfer decision. Rather, the Supreme Court simply held that the federal statute before it required the juvenile court 'to accompany its waiver order with a statement of the reasons or considerations therefor.'").

[32] TEX. FAM. CODE § 54.02(a).

[33] TEX. FAM. CODE § 54.02(j).

or criminal district court for criminal proceedings if: (1) the child is alleged to have violated a penal law of the grade of felony; (2) the child was 15 years of age or older at the time he is alleged to have committed the offense, and no adjudication hearing has been conducted concerning that offense; and (3) after full investigation and hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense or the background of the child the welfare of the community requires criminal proceedings.[34]  Another subsection provides:

> (f) In making the determination required by Subsection (a) of this section, the court shall consider, among other matters:
>
>> (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;
>>
>> (2) whether the alleged offense was committed in an aggressive and premeditated manner;
>>
>> (3) whether there is evidence on which a grand jury may be expected to return an indictment;
>>
>> (4) the sophistication and maturity of the child;
>>
>> (5) the record and previous history of the child; and

---

[34] TEX. FAM. CODE § 54.02(a).

(6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.[35]

And yet another provides, in part,

(h) If the juvenile court waives jurisdiction, it shall state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court, and shall transfer the child to the appropriate court for criminal proceedings.[36]

But transfer of an adult who committed the felony as a child occurs under

Section 54.02(j):

(j) The juvenile court may waive its exclusive original jurisdiction and transfer a person to the appropriate district court or criminal district court for criminal proceedings if:

(1) the person is 18 years of age or older;

(2) the person was 15 years of age or older and under 17 years of age at the time he is alleged to have committed a felony;

(3) no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted;

(4) the juvenile court finds from a preponderance of the evidence that after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because: (A) the state did not

---

[35] TEX. FAM. CODE § 54.02(f).

[36] TEX. FAM. CODE § 54.02(h).

have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person; or (B) the person could not be found; and

(5) the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged.[37]

Subsection (j) does not require the juvenile court to consider the (f) factors.[38] Nevertheless, the transfer order in this case includes boilerplate recitations of those (f) factors[39]—the same thing that doomed *Moon*'s order.[40]  And Subsection (h), in any event, requires a juvenile court waiving jurisdiction under (j) to "state specifically in the order its reasons for waiver."[41]

---

[37] TEX. FAM. CODE § 54.02(j).  Like a transfer under (a), transfer under (j) requires a hearing.

> (k) The petition and notice requirements of Sections 53.04, 53.05, 53.06, and 53.07 of this code must be satisfied, and the summons must state that the hearing is for the purpose of considering waiver of jurisdiction under Subsection (j) of this section.

> (l) The juvenile court shall conduct a hearing without a jury to consider waiver of jurisdiction under Subsection (j) of this section.

[38] *Moon*, 451 S.W.3d at 52 n.90 (setting out the criteria for a transfer under Section 54.02(j)); *Ex parte Moon*, 2020 WL 827424, at *11 (rejecting due process challenge to a second certification under section 54.02(j) after the defendant's prior certification under section 54.02(a) and (f) had been reversed; quoting Moon's argument that Section 54.02 is unconstitutional because "'it contains no exception to the applicability of § 54.02(j) for those who were originally entitled to the protections of § 54.02(a), (d), and (f) but were wrongly certified under those sections.'" ).

[39] *See supra* note 9.

[40] *See Moon*, 451 S.W.3d at 51.

[41] Subsection (h) might be read as directed at transfers under (a) because it refers to the transferring of "the child" and comes before (j).  Subsection (j) and its relatives refer to a

None of the provisions quoted above require the juvenile court to recite the underlying facts upon which its reason for transfer is based.[42] Rather, the statutory scheme merely directs the juvenile court to state the reasons for the waiver set out in the statute. The additional language "including the written order and findings of the court" in Section 54.02(h) allows for "findings," but it does not require case-specific fact-finding beyond a statement of the reasons for transfer. To the extent that language in *Moon* suggests otherwise, we disavow it.

### *Kent v. United States* Does Not Require that a Juvenile Court Enter Formal, Case-Specific Fact-Findings For a Valid Waiver of Jurisdiction

In *Moon*, this Court also examined *Kent v. United States* to explain the underpinnings of the transfer statute in Texas. The Court considered how transfer statutes must "measure up to the essentials of due process and fair treatment."[43] But *Kent* dealt with a transfer in which no adversarial transfer hearing was even held.[44] A juvenile court in Washington, D.C., entered its order waiving juvenile jurisdiction without

---

"person," save (j)(5) which refers to "the child." Nevertheless, subsection (h) is not by its language limited to transfers under (a) as is subsection (f).

[42] *See Moon*, 451 S.W.3d at 54 (Keller, P.J., dissenting).

[43] *Moon,* 451 S.W.3d at 36 (quoting *Kent*, 383 U.S. at 560–62).

[44] *Kent*, 383 U.S. at 546. *See Moon*, 451 S.W.3d at 54 (Keller, P.J., dissenting).

holding a transfer hearing, making findings, or including reasons for transfer.[45]   The Supreme Court stated that, under the D.C. statute, juveniles are entitled to at least the hearing and reasons.[46]

> The net, therefore, is that petitioner—then a boy of 16—was by statute entitled to certain procedures and benefits as a consequence of his statutory right to the 'exclusive' jurisdiction of the Juvenile Court. . . . [A]s a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel.[47]

*Kent* focused upon an arbitrary deprivation of liberty due to an almost complete denial of counsel and the complete lack of an adversarial hearing.[48]  As the Supreme Court noted, juvenile courts have substantial discretion in making the transfer decision, but that discretion isn't a license for arbitrary procedure.[49]

---

[45] *Kent*, 383 U.S. at 546.

[46] *Id.* at 557.

[47] *Id.*

[48] *Id.* at 554 ("We do not consider whether, on the merits, Kent should have been transferred; but there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons.").

[49] *Id.* at 553.

*Kent* does note that juvenile-transfer orders must include a statement of the reasons or considerations for waiving exclusive jurisdiction.[50]  But *Kent*'s "reasons requirement" for juvenile-transfer orders did not impose the "show your work" rule that this Court came up with in *Moon*.[51]  In *Kent*, the juvenile court waived jurisdiction based only on the statement that a "full investigation" had been conducted, whereas in *Moon*, the juvenile court explained the basis for its waiver with an order that corresponded with the generic reasons set forth in the Family Code.[52]  Although *Kent* referred to the requirement of a juvenile court providing specific reasons in support of its transfer order, it also said the statement need not be formal or necessarily include conventional findings of fact, and it did not require case-specific findings in the transfer order

---

[50] *Id.* at 561.

[51] *See Ex parte Navarro*, 538 S.W.3d 608, 618 (Tex. Crim. App. 2018) (Alcala, J., dissenting).

[52] *Kent*, 383 U.S. at 546 ("The Juvenile Court judge did not rule on these motions [to give counsel access to the social service file relating to petitioner]. He held no hearing. He did not confer with petitioner or petitioner's parents or petitioner's counsel. He entered an order reciting that after 'full investigation, I do hereby waive' jurisdiction of petitioner and directing that he be 'held for trial for (the alleged) offenses under the regular procedure of the U.S. District Court for the District of Columbia.' He made no findings. He did not recite any reason for the waiver. He made no reference to the motions filed by petitioner's counsel."); *Moon* 451 S.W.3d at 50 ("The only reason specifically stated on the face of the transfer order to justify waiver of juvenile jurisdiction is that the offense alleged is a serious one"—a reason stated in 52.04(a).).

itself.[53]

*Moon* thus constituted a significant expansion of *Kent* by requiring case-specific fact findings to support a transfer order.[54] Detailed findings are certainly preferable and helpful to keep the appellate court from having "to rummage through the record for facts that the juvenile court might have found, given the evidence developed at the transfer hearing, but did not include in its written transfer order."[55] But it's the hearing itself that prevents the transfer process from being arbitrary; the case-specific fact-findings are not necessary to protect a fundamental constitutional right. *Kent* does not hold otherwise. To the extent that language in *Moon* suggests that such findings are a fundamental constitutional right, we disavow that language.

## So What is Left of *Moon*?

Nothing. As discussed above, the requirement of case-specific fact-findings to support the reasons for the transfer are not required by the

---

[53] *See Moon,* 451 S.W.3d at 54 (Keller, P.J., dissenting) ("The Supreme Court expressly stated that it did not read the federal statute to require that the statement of reasons 'be formal or that it should necessarily include conventional findings of fact.' The Supreme Court did suggest that a 'statement of relevant facts' was necessary for appellate review, but that suggestion was made in the context of a case in which no hearing was held, and, so, no evidence would have been heard on the matter.") (quoting *Kent*, 383 U.S. at 561).

[54] *See Ex parte Navarro*, 538 S.W.3d at 618–19 (Alcala, J., dissenting).

[55] *Moon*, 451 S.W.3d at 50.

text of the statute or constitutional precedent.[56]  To the extent that *Moon* establishes a new standard of review for sufficiency of a juvenile transfer order on direct appeal, that standard was tied to the requirement that the trial court enter case-specific fact findings justifying the transfer of jurisdiction.[57]  Without *Moon*'s requirement of case-specific fact-finding, that type of sufficiency review is unworkable.

Our resolution of the cognizability issue in this case has implicitly overruled *Moon*.  *Stare decisis* principles do not prevent us from doing so explicitly.  True, this Court should not frivolously overrule established precedent.[58]  But *stare decisis* is not an inexorable command.[59]  While there is a strong presumption in favor of established law, this Court has noted that it may reconsider its precedent when, for instance, the original rule or decision was flawed from the outset, produces inconsistent, unjust

---

[56] We seemed to have supported this new court-made rule through reliance upon *Cullen v. State*, 195 S.W.3d 696 (Tex. Crim. App. 2006), a case in which we held that the losing party in a motion to suppress may require a trial court to enter findings of facts and conclusions of law.  *Moon*, 451 S.W.3d at 49 n.86.  Given the wide difference in procedural posture between *Moon* and *Cullen*, the comparison did not support the Court's holding.

[57] *Moon*, 454 S.W.3d at 47 ("Similarly, we hold that, in evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under 'traditional sufficiency of the evidence review.'").

[58] *Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000).

[59] *Id.* at 571–72.

or unanticipated results or places unnecessary burdens on the system.[60]

Adhering to such precedent does not promote judicial efficiency and consistency, encourage reliance upon judicial decisions, or contribute to the integrity of the judicial process.[61]  As the United States Supreme Court recently explained, when addressing the concept of *stare decisis*, precedent warrants "deep respect as embodying the considered views of those who have come before."[62]  But "*stare decisis* isn't supposed to be the art of methodically ignoring what everyone knows to be true."[63]  Ultimately, we have held that we are not constrained to follow precedent that is wrongly decided or unworkable.[64]  *Moon* is both.

As set out above, *Moon* was flawed from the outset.[65]  Neither the statute's text nor the Supreme Court's holding in *Kent* required what

---

[60] *Ex parte Lewis*, 219 S.W.3d 335, 338 (Tex. Crim. App. 2007) ("Some factors supporting the overruling of precedent are: (1) that the original rule or decision was flawed from the outset, (2) that the rule's application produces inconsistent results, (3) that the rule conflicts with other precedent, especially when the other precedent is newer and more soundly reasoned, (4) that the rule regularly produces results that are unjust, that are unanticipated by the principle underlying the rule, or that place unnecessary burdens on the system, and (5) that the reasons that support the rule have been undercut with the passage of time.").

[61] *Paulson*, 28 S.W.3d at 571.

[62] *Ramos v. Louisiana*, 140 S. Ct. 1390, 1404–05 (2020).

[63] *Id.*

[64] *Paulson*, 28 S.W.3d at 571.

[65] *See Bawcom v. State*, 78 S.W.3d 360, 363 (Tex. Crim. App. 2002) (a factor that supports overruling precedent is when the original rule was "flawed from the outset").

*Moon* required.  It was an unjustifiable, court-created expansion.

*Moon* is also unworkable.  It places unnecessary burdens on the system because individual sufficiency review of each factor can lead to internally inconsistent analysis of the reasons for transfer.  The statute does not mandate that any particular factor be true, state that the factors are exclusive, or limit the purpose for which the statutory factors may be considered.  Moreover, assuming that recitation of other statutory factors satisfies sufficiency review of each individual factor, *Moon* still requires sufficiency review of the factors collectively.  *Moon* provides no guidance on how to conduct a review when the juvenile court has imported its own factors[66] or when that analysis involves both factual and legal sufficiency.[67]

Moreover, *Moon* was an outlier.  As Presiding Judge Keller noted in her *Moon* dissent, "for almost forty years, the tendency among the courts of appeals has been to hold that a juvenile transfer order need not specify in detail the facts supporting the order."[68]  The Legislature's failure to

---

[66] *Moon*, 454 S.W.3d at 56 (Keller, P.J., dissenting)

[67] *Id.* at 54–55 (Keller, P.J., dissenting) ("[I]f two or more factors are supported by legally sufficient but factually insufficient evidence, must all of the factors be disregarded as insufficient, or can multiple factors that are individually supported by factually insufficient evidence nevertheless add up to sufficient evidence as a whole?").

[68] *Id.* at 52 (Keller, P.J., dissenting) ("The court of appeals in this case broke rank with the weight of that authority, and this Court now goes along with the court of appeals's

change the statutory wording in light of that long-standing authority is some indication that the Legislature approves of the construction given.[69] And if the Legislature had wanted to require the juvenile court to recite the facts that support its decision to transfer, the legislature could have easily drafted language to that effect.[70]

What the Legislature did do, in response to our decision in *Moon*, was repeal Article 44.47 of the Code of Criminal Procedure and add Section 56.01(c)(1)(A) to the Family Code. That took review of these claims away from this Court and created a vehicle for immediate, interlocutory appeal to the courts of appeals and then to the Texas Supreme Court.[71] This provides more immediate safeguards for juveniles being transferred to district court for trial as an adult than the fact-specific finding requirement set out in *Moon*.[72] The Texas Supreme Court

---

unconventional holding.").

[69] *Id.* at 53 (Keller, P.J., dissenting) (citing *State v. Colyandro*, 233 S.W.3d 870, 878 (Tex. Crim. App. 2007)).

[70] *Id*. at 53 (Keller, P.J., dissenting).

[71] *See* Acts 2015, 84th Leg., ch. 74 (S.B. 888), § 3, eff. Sept. 1, 2015. *See also* Misc. Docket No. 15-9156 (Tex. Aug. 28, 2015).

[72] *See, e.g.*, Enrolled Bill Summary of S.B. 888, 84th. Leg., R.S. (2015) (" A recent ruling by the Texas Court of Criminal Appeals found that a juvenile court in Harris County was providing "insufficient evidence" detailing why a youth should stand trial as an adult. Allowing an immediate appeal of a juvenile certification would save the state valuable resources by preventing adult court trials in cases of improper certification.").

has not addressed the method of analysis and review of orders transferring jurisdiction in juvenile cases,[73] but it is not bound by *Moon*.[74] And decades of case law preceding *Moon* from this Court and our sister court alike remain as guidance for the appellate courts.

## Conclusion

Given *Moon*'s strained reasoning, its inconsistency with related decisions, and the legal developments since the decision, we explicitly overrule it. A juvenile transfer order entered after the required transfer hearing and complying with the statutory requirements constitutes a valid waiver of jurisdiction even if the transfer order does not contain factually-supported, case-specific findings. In the present case, the juvenile court conducted a transfer hearing. The transfer order complied with the

---

[73] *See Matter of C.A.P.*, 582 S.W.3d 504, 508 n.1 (Tex. App.—Waco 2018, pet. denied).

[74] The Supreme Court of Texas ordinarily follows the Court of Criminal Appeals in its interpretation of penal laws. *See Stakes v. Rogers*, 139 Tex. 650, 165 S.W.2d 81 (1942); *Kadane v. Clark*, 135 Tex. 496, 143 S.W.2d 197 (1940); *State v. Ferguson*, 133 Tex. 60, 125 S.W.2d 272 (1939); *State ex rel. Shook v. All Texas Racing Ass'n.*, 128 Tex. 384, 97 S.W.2d 669 (1936); *Shrader v. Ritchey*, 158 Tex. 154, 309 S.W.2d 812 (1958). And such policy extends to situations where the Court of Criminal Appeals has declared a statute unconstitutional. *State ex rel. Pettit v. Thurmond*, 516 S.W.2d 119 (Tex.1974). But inherent in the Supreme Court's use of "ordinarily" is the concept that this deference is not mandatory. Indeed, the Supreme Court explained this over a hundred years ago. *See State v. Schwartz*, 103 Tex. 119, 122 (Tex. 1910) (although it ordinarily follows the construction given to penal statutes by the Court of Criminal Appeals, the Supreme Court, when interpreting statutes that affect a contest of a local option election (an issue intrusted to the civil courts), will put its own construction on such statutes and not follow that of the Court of Criminal Appeals). And the Supreme Court has recently reiterated its authority to depart from this Court's interpretations even when agreeing with it. *See Eddington v. Dallas Police & Fire Pension Sys.*, 589 S.W.3d 799, 804 (Tex. 2019) ("We are not, of course, bound by our sister court's interpretations of the Texas Constitution, but here, we find ourselves in agreement with *Van Houten*.").

statute by listing the reasons for the transfer.  Therefore, the criminal district court had jurisdiction over the case.  Applicant's post conviction writ is denied.

Filed: March 31, 2021

Publish